No. 15.—EDWARD A. WHITE and others, plaintiffs in error *vs.*
EDMUND MOLYNEUX, defendant in error.

[1.] A note given for rent *of a store-house* is described in the plaintiff's writ as given
for rent, omitting the words *of store-house.* Held not to be a fatal variance under our
statute.

[2.] In case of express contracts to pay rent, the destruction of the premises by fire, or
violence, or any casualty whatever, is not a good defence to an action to recover the
rent, unless there is also an express stipulation to that effect. Nor will a Court of
Equity relieve against such contracts under such circumstances.

Action for Rent. From Muscogee Superior Court. Tried before Judge Alexander. November Term, 1846.

For the points, see decision of the Supreme Court.

A. G. FOSTER & HINES HOLT, for the plaintiff in error, submitted the following points, with a brief of authorities relied upon.

First. No consideration is necessary to give validity to a specialty. *Chit. on Con.* 2; 4 *Barn. & Ald.* 652; 3 *Bing.* 111, 112.

Where a thing is lawful at the time of covenant made, and afterwards the thing agreed to be done is prohibited by act of Parliament, yet such covenant will bind; 3 *Mod.* 39. And if a man *covenant* to do a thing before a certain time, and it becomes impossible, from act of God, this shall not excuse him, inasmuch as he hath bound himself precisely to do it. 2 *Danv. Abr.* 84. As to covenants in this regard, see *Shep. Touch.* 160. In the case of a specialty no consideration is necessary, even in a Court of Equity. *Plowd.* 308; *Fallows* vs. *Taylor,* 7 *T. R.* 477; 4 *Bar. & Ald.* 652; 1 *Fonb. Eq.* 5 ed. 342, *note;* 3 *T. R.* 438. And the doctrine of estoppel applies only in the case of deeds and records. 2 *Bla. Com.* 295; *Comyn. Dig. Estop.* 1 *Saund.* 216, *note* 2; 3 *T. R.* 424.

Where an obligation is imposed by rule of law, and there is not an express covenant, then an act of irresistible violence will excuse the party. *Bealle* vs. *Thompson,* 3 *Bos. & Pull.* 420, 301; *Warren* vs. *Powers,* 5 *Conn. R.* 381. In all simple contracts the consideration may be inquired into. 7 *T. R.* 350, *note a; Chit. on Con.* 6, 7; 3 *Penn. R.* 414; 4 *John. R.* 235, 296; 4 *Munf.* 95, 273; 7 *Cowen,* 322; 3 *Dessausure,* 310, 341; 2 *Day,* 22. And, if there be a partial failure, it may be specially pleaded, *Hotchkiss,* 572.

In equity, loss by fire discharges the rent; and, though landlord may maintain action at law, equity will restrain by injunction until house is rebuilt. *Treat. of Equ. Lib.* 1, *ch.* 5, *sec.* 8; *Amb.* 619; *Steele* vs. *Wright,* 1 *T. R.* 708; *Gates* vs. *Green,* 4 *Paige's R.* 355. And, under our statute, if party can establish his right without resorting to the conscience of the opposite party, he shall not be compelled to resort to equity, but may proceed to establish his right at Common Law. *Hotchkiss,* 675, *secs.* 2 and 3.

All the authorities that support the doctrine that the tenant is bound for rent notwithstanding premises are destroyed, proceed upon the ground of *express covenants;* and, if the party be injured, he has his remedy over. 3 *Burrows,* 1637. If the house be blown down by a storm during the term, the rent shall be apportioned. 4 *McCord,* 447; *Ripley* vs. *Wightman,* 6 *Bacon,* 50. Jury may apportion rent due, *Gilbert on Distress,* 189.

If hired slave die during the year his wages shall be apportioned, *Bacot* vs. *Parnell,* 2 *Bailey's R.* 424; *George* vs. *Elliot,* 2 *Hen. & Munf.* 5. Tenant is not liable for use and occupation if he has no beneficial occupation. *Edwards* vs. *Etherington, Ryan & Moody,* 268; *Salsbury* vs. *Marshall,* 4 *Car. & Payne,* 65; 7 *D. & R.* 117; 8 *Bar. & Cres.* 324. If premises are unwholesome from want of drainage &c. 1 *Moody & Ryan,* 112.

Second. A contract or written instrument should be stated according to its legal effect. *Morris* vs. *Fort,* 2 *McCord,* 398; 10 *John. R.* 90. The contract proved should accord with the contract alleged. *Crawford et al.* vs. *Morrell,* 8 *John. R.* 253; *Smith* vs. *Barker,* 3 *Day,* 312; *Churchhill* vs. *Wilkins,* 1 *T. R.* 447; *Tate* vs. *Wellings,* 3 *T. R.* 538; *Leery* vs. *Goodman,* 4 *T. R.* 687. To allege a consideration for the promise different from the true one not supported by the proof, will be cause for non-suit. *Stone* vs. *Knowlton,* 3 *Wendall,* 374; 2 *Johnson's Cases,* 55.

JOHN JONES and ALEXANDER McDOUGALD, for the defendant in error.

First. The lessee of a house is bound by his contract, though the house is destroyed by the act of God or the King's enemies. 3 *Kent's Com.* 465; *Story's Equity Jurisp. ch.* 116, *secs.* 101, 102; *Mark* vs. *Cooper,* 2 *Lord Raymond,* 1477; *Belfour adm.* vs. *Weston,* 1 *T. R.* 310; 3 *Burr.* 1637; *Do. ex dem. Ellis & Medwin* vs. *Sandham,* 1 *T. R.* 705; *Walton* vs. *Waterhouse,* 3 *Saunders,* 422,

and *note* 2 to same case; *Baker* vs. *Holtzapffel*, 4 *Taunt.* 44; *Holtz-apffel* vs. *Baker*, 18 *Ves. Jr.* 116; *Fowler* vs. *Bott*, 6 *Mass.* 63; *Phil-lips* vs. *Stephens*, 16 *Mass.* 238; *Hallet* vs. *Wilie*, 3 *John.* 44; 2 *Kinne's Law Com.* 534.

Second. In duties created by operation of law, equity will grant relief. But not in matters of positive contract and obligation will equity interfere. *Story's Equity Jurisp. ch.* 116, *secs.* 101, 102.

*By the Court.* — NISBET, J. delivering the opinion.

[1.] The first question made upon this record is as to variance between the allegation in the writ, descriptive of the note sued on, and the note tendered in evidence. There was a demurrer to the evidence. The writ set forth a note given *for rent,* generally, and the note tendered in evidence, was given for rent *of a store-house.* It is claimed, that the Court erred in overruling the demurrer. As the Common Law stood at the time of our adoption of it, we are inclined to believe that this would be a fatal variance; in England, at this day, it certainly would not be; under our statute we cannot hold the variance fatal. The plaintiff's cause of action is so plainly and distinctly set forth, that the defendant is put upon his guard as to the nature and identity of his demand, and the record of recovery here, would be a good bar to another action between the same parties upon the same cause of action.

[2.] This was an action for rent, to which the defendant pleaded the destruction of the house rented, by fire. Upon motion the Court ordered the plea to be stricken out, and error is assigned upon that decision. We consider this question as conclusively settled in England and the United States, if authority can settle any thing. It is well settled, that neither a court of law, nor of equity, will relieve against an express contract to pay rent upon the ground that the premises have been destroyed by fire, or the King's enemies, or any casualty whatever, unless there is an express stip-ulation to that effect. Inevitable accident will excuse a party from a penalty, but will not relieve him from his covenant to perform. 1 *Dyer,* 33 *a;* 3 *Kent,* 468.

And an eviction of the tenant upon a title paramount to the landlord's, will excuse the tenant from payment of rent. *Idem Auct.* Also, *Crabb's Law of Real Property, t. p.* 152; *Gilb. Rents,* 145.

By the law of Scotland, upon the hire of property, a loss or in-jury to that property, which is not occasioned by the fault or neg-

ligence of the hirer, falls upon the owner; and the lessee is enti-
tled to an abatement of the rent in proportion to any partial de-
struction of the subject.  1 *Bell's Com.* 452.  A similar doctrine
prevails in Louisiana.  *Civil Code of Louisiana, art.* 2667.  And
in France by the Code of Napoleon.  *Code Nap. art.* 1722.  Puff-
fendorff considers this a plain principle of natural law, founded in
eternal justice.  *Puff. book* 5, *ch.* 6, *sec.* 2.  By the Civil Law the
Prætor would exempt the tenant from paying rent, or modify the
obligation according to equity, when the property was destroyed
by fire, inundation or violence, or the crops failed by bad seasons.
*Dig.* 19, 2, 15, 2; *Code,* 4, 65, 8.  In a case in England, *Brown*
vs. *Quitter,* Lord Northman thought it very clear, that a man
should not pay rent for what he cannot enjoy, if occasioned by an
accident which he did not undertake to meet.  *Amb. R.* 619.  In-
deed the Courts of Equity in England for a long time struggled
against a contrary doctrine.  See *Harrison* vs. *North,* 1 *Ch. Cas.*
83; *Steel* vs. *Wright,* 1 *T. R.* 708, *note.*  The question whether a
Court of Equity would grant relief against a landlord's claim for
rent has been set at rest in England, in *Hare* vs. *Grove,* 3 *Anst. R.*
687, and *Holtzapffel* vs. *Baker,* 18 *Ves. Jr.* 115; and *Leeds* vs.
*Chatham,* 1 *Simon,* 146; see also, 1 *Harr. & Johns.* 42.

The reason in equity is, that in case of the destruction of the
property, the loss of the rent must fall somewhere, and there is
no more equity that the landlord should bear it than the tenant,
when the tenant has expressly agreed to pay it, and when the
landlord must bear the loss of the property destroyed.  Equity
considers the calamity mutual.  She will not interfere to relieve
against the express contract of the tenant.  So that, notwithstand-
ing the opinion of Puffendorff, the authority of the Civil Law, and
even some adjudications in England and in this country, we con-
sider the rule established as we at first laid it down.

As early as the reign of Henry VIII this question was mooted at
law, and in the case of Taverner it was left unsettled.  1 *Dyer's R.*
55, 56.  In the reign of Charles I, the Court of Kings' Bench held,
that where the rentor had been driven from the premises by pub-
lic enemies, viz. Prince Rupert and his soldiers, he could not plead
it in bar of the rent.  *Chancellor Kent,* after reviewing the authori-
ties, declares: "It is well settled that, upon an express contract to
pay rent, the loss of the premises by fire, or inundation, or exter-
nal violence, will not exempt the party from his obligation to pay
rent."  3 *John. R.* 44; 4 *Taunt. R.* 45; *Pollard* vs. *Shœffer,* 1 *Dall.*

R. 210; *Fowler* vs. *Bott*, 6 *Mass. R.* 63; *Wagner* vs. *White*, 4 *Han & John.* 564; *Gales* vs. *Green*, 4 *Paige* 355; 3 *Kent*, 466; 1 *Dyer R.* 33; 6 *T. R.* 650; 6 *T. R.* 750; 2 *Stra. R.* 763; 1 *Story Com. secs.* 101, 102.

The reasons upon which the decisions at law have gone, are, that it is competent for a party, in his contract, to stipulate against payment in case of fire, or other casualty, or violence; and, having failed to do so, he cannot take advantage of his laches. The contract is an executed one; the tenant is in the position of a purchaser of the premises for the term; he is let into the possession, and the landlord has no right to enter or in any way molest him. And, as in all other express, unconditional contracts, both parties must abide their solemn act.

The rule, too, is not without foundation in policy. It secures, on the part of the tenant, that carefulness and vigilance which is necessary to the safety of the owner's property whilst he is out of possession, and whilst it is under the absolute control of one who has only a temporary interest in it. If the destruction by fire would excuse the payment of rent, then might the tenant, so far as pecuniary interest is concerned, become careless to protect it. The owner would be left to rely upon the tenant's sense of moral obligation, which unfortunately is not, in all men, so just or so strong as to constrain them to do right. Indeed there are men to be found base enough to burn down a house, to get rid of the payment of rent, if their interest might thereby be subserved. The contrary of this rule would therefore operate in restraint of renting. Let the judgment of the Court below be affirmed.