51  501
73   32

## M. P. LEVEY et al. vs. THOMAS DYESS.

1. PRACTICE: CIRCUIT COURT: *Demurrer to declaration.*
    The rule is, that a demurrer to the declaration containing several counts, must be overruled if one count in the declaration be good.

2. LESSOR AND LESSEE: *Covenant to repair or rebuild.*
    Where D. leased to L. a steam saw mill with implements, etc., for one year for a stipulated price, under the following agreement to redeliver, to-wit: "at the expiration of the twelve months, to deliver to D. the steam

saw mill, together with said implements and tenements, and two log
carts, the said steam saw mill in good running order, except the usual
wear and tear, and the log carts, implements and tenements without
damage except the running wear and usage," and L. took possession of
the property in good order. During the tenure, the property was con-
sumed by fire. *Held*, that in the absence of proof of neglect or other
fault on the part of L., he is not bound to rebuild the mill and tene-
ments.

3. SAME: SAME: *Intention of the parties.*

The intention of the parties is the cardinal rule in the construction of cov-
enants, and the courts will not extend or enlarge the obligations of the
lessee, beyond the plain meaning and intention of the parties. In the
absence of covenants equivalent to an express stipulation to rebuild or
restore edifices or structures destroyed by casualty or proof of negli-
gence or fault in the lessee, the loss is on the reversioner.

4. SAME: SAME: *Care. Responsibility.*

The contemplation of the parties to such a stipulation when applied to
houses, a saw mill or machinery is, that the lessee will take ordinary
good care of the property, according to its nature, and the responsibility
of an insurer is not imposed upon him.

ERROR to the Circuit Court of *Clarke* County.

Hon. WILLIAM M. HANCOCK, Judge.

This was an action of covenant on a sealed lease for the rent of
a steam saw mill. The declaration avers that the defendant stip-
ulated in the contract of lease, that at its expiration they would
return and redeliver the mill, etc., in good running order, except
the usual wear and tear. It avers, further, that the defendants
were put in possession of the mill, which was in good repair; that
they occupied it until it was destroyed by fire, and that the lease
had expired and defendants had failed to redeliver. The lease
provides as follows: " This agreement witnesseth : That Thomas
Dyess has this day rented and.leased to M. P. Levey and G. A.
Levey, surviving partners of the firm of Levey, Woolverton &
Co., his steam saw mill, together with the implements, tenements
and two log carts, one in good repair, thereunto belonging. The
condition of said lease is as follows, to wit: The said L. P.
Levey and A. G. Levey, surviving partners, are to have posses-

sion of the mill, tenements, carts, implements aforesaid, for twelve months from this date.   At the expiration of twelve months the said M. P. Levey and A. G. Levey, surviving partners, etc., shall return mill, tenements, carts and implements to the said Thomas Dyess; the said mill to be in good running order, except the usual wear and tear ; the log carts and implements to be returned according to the schedule of the same herewith attached, without damage, except the running wear and usage.

"For and in payment of the above lease, M. P. Levey and A. G. Levey, surviving partners of the late firm of Levey, Woolverton & Co., hereby agree and promise to give the said Thomas Dyess, receipt in full for his entire indebtedness to the late firm of Levey, Woolverton & Co.   In witness, we have hereunto set our hands and seals, the first day of April, 1869."   (Signed in dupli-cate.)

The declaration was demurred to, and the demurrer overruled. The defendant pleaded sundry pleas.   Plaintiff replied to some of them, and to others he demurred.   The pleadings were settled and the case was presented to the jury.

Various instructions were asked by both parties.   Some were given and others refused.   The refusing of some is made the basis of one of the assignments of error, but as the instructions were not passed upon by the court, it is thought best to omit them.

The following errors are assigned, to wit:

1. The court erred in overruling the demurrer to the plaintiff's declaration.

2. The court erred in sustaining the demurrer of the plaintiff to the second plea to the first count in plaintiff's declaration.

3. The court erred in sustaining the demurrers to the third plea to the first count.

4. The court erred in sustaining the demurrer to the second plea to the second count in said declaration.

5. The court erred in permitting plaintiff to withdraw his rep-lication to the first plea.

6. The court erred in sustaining the demurrer to the said first plea.

7. The court erred in sustaining the demurrer to the plea filed at the March term, 1872.

8. The court erred in adjudging that the defendant had no right to plead further, and in awarding an inquiry of damages upon sustaining the last named demurrer.

9. The court erred in refusing leave to amend special pleas filed at March term, 1872.

10. The court erred in not granting a new trial.

11. The court erred in permitting witness Smith to testify to the value of the mill, etc., in the declaration mentioned, and the rental value thereof.

12. The court erred in refusing to permit the witnesses Thompson, Walcott, Stevens and Wright, to answer the several questions propounded to them, to wit: 1. What injury was done the mill by burning the tenements, or shed which covered it? 2. What were the machinery, engine, boiler and appurtenance worth after the burning? 3. What would it have cost to put said mill in good condition and running order? 4. Could or could not it have been done for $500? And erred in sustaining the objection of said plaintiff Dyess, to said questions, and each of them, and in refusing to permit said witnesses to answer said questions, and each of them.

13. The court erred in giving for plaintiff the 1st, 2d and 3d instructions, and each of them.

14. The court erred in refusing instructions asked by these plaintiffs, viz: the last set of instructions, marked 1st, 2d, 3d, 4th, 5th and 6th, and each of them.

*S. A. D. Steele* and *W. H. Hardy*, for plaintiff in error, argued the case orally.

[The reporters find no brief on file.]

*J. S. Hamm* and *Harris & George*, for defendants in error, argued the case orally.

[The reporters find no brief on file.]

SIMRALL, J., delivered the opinion of the court.

This suit was brought by Thomas Dyess, the lessor, against M. P. & A. G. Levey, lessees, for breach of one of the covenants of the lease. The declaration stated that the defendants "had leased from the plaintiff, his steam sawmill, together with the implements, tenements, and two log carts, * * for the term of twelve months, from the first day of April, 1869, for which the defendants were to give a full acquittance and discharge of plaintiff's indebtedness to the firm of Levey, Woolverton & Co., of which they were surviving partners." "At the expiration of the twelve months, the defendants were to redeliver to the plaintiff, said steam sawmill, together with said implements and tenements, and two log carts, the said steam sawmill in good, running order, except the usual wear and tear, and the log carts, implements and tenements, without damage, except the running wear and usage." "That defendants, immediately took possession of the property which was then in good order, and used and enjoyed the same until the — day of ——, 1869, when the mill, with the other property, was consumed by fire. The breach assigned is, a failure to redeliver according to the covenant, but a neglect and failure to rebuild said mill and replace and return said implements and tenements and log carts."

The second count is like the first, substantially, omitting the allegation of the destruction of the property by fire.

The defendants demurred to the declaration, assigning several causes. The argument chiefly relied on by counsel in this court in support of the demurrer is, that the lessees are not bound by their covenant to rebuild and restore the property to the *statu quo*.

The rule is, that a demurrer to the declaration, containing several counts, must be overruled if one count be good. Here the second count states the breach to be a failure to redeliver the property, generally, as required by the covenant. This count sets out a good cause of action. Without passing upon the merits of the first, in this connection, it suffices to refer to the rule there stated, as a sufficient reason for overruling the demurrer. It is

unnecessary to dispose of the other causes of demurrer, *seriatim ;* there is nothing in them.

It is assigned for error that the circuit court ought not to have adjudged, on demurrer, the second pleas to the first and second counts of the declaration to be bad. Those pleas allege that the sawmill and other property was casually destroyed by fire, without the act, negligence or default of the defendants, so they could not redeliver the same, etc.

The first count alleges a destruction by fire, but does not state who was responsible, if anybody, for it. The plea sets up as an excuse for the failure to redeliver, a casual destruction, without the act of negligence or fault of the defendants. Does the plea present a valid excuse? If the lessees were obliged by the terms of the lease to return the property at all events, then the excuse cannot avail. The covenant is recited in the count. The question is, whether the lessees are responsible for an accidental destruction by fire.

The intention of the parties is the soul of the contract. The language used is the chief exponent, but the relations of the parties, the subject matter, and, if necessary, the attendant circumstances, may be looked to. In those instruments most commonly in use, such as deeds of conveyance, leases and commercial instruments, certain words and phrases peculiar to each have, by usage and the decisions of the courts, acquired definite and fixed meanings. When they occur it may be assumed that the parties adopted the sense thus established. But such is the flexibility of language, that when technical and formal terms are omitted, and the idea is expressed in popular words, we may expect great variety in the expression.

We can, perhaps, best determine the extent of obligations assumed by the lessees, by comparing their covenant with those most closely resembling it, which have been construed by the courts.

In Fowler & Moore *v.* Payne, 49 Miss., 76, after considering the terms of the contract, and determining that the party was under

an obligation to repair, the court says that "it was equivalent to a covenant to rebuild." The statement of the rule, in Leavitt v. Fletcher, 10 Allen, 119, is accepted as a true enunciation of it, viz: "That an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger." In Abby v. Billups, 35 Miss., 630, 631, the covenants are not set forth, but the principle is affirmed to be ancient and well settled that such a covenant binds the lessee to rebuild. The chief justice says that Walton v. Waterhouse, 2 Saund., 422, and note 2, "contains all the English law on the subject." (3 Saund., 422, true reference.) The reason given in the note is, "that where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract; and, therefore, if a lessee covenant to repair a house, though it be burnt by lightning,  *  *  yet he is bound to repair it." So, when a party was bound to repair a bridge, it was held to be no excuse that the bridge was injured or destroyed by a great flood of water. The Brecknock Navigation Co. v. Pritchard, 6 Term, 750.

In Maggort v. Hansberger, 8 Leigh, 536, 537, the grist mill, saw mill and carding machine were accidentally consumed by fire; the court commenting on the covenant of the lessee, viz: "to return the said property with all its appurtenances," said: "There are strong considerations that would render the court averse to extending the doctrine of the tenant's liability in any degree beyond the decided cases." To bind him to so unequal a risk, his covenant ought to be special and express, and so clear as to leave no doubt that he intended to take the risk, etc. This was held to be no more than a covenant "not to hold over." In Harris v. Nicholas, 5 Munf., 483, the covenant was to return the slave, well clothed, on the 25th of December. The slave having died, the court said, by looking at the mere words, the hirer was bound, at all events, to return; but such could not have been the intention of the parties.

In Nave v. Berry, 22 Ala., 383, 391, the covenant was, "the said house, with the appurtenances thereto attached, to deliver up on," etc. In the judgment the distinction is taken between a covenant to "deliver up" and to "repair." The latter binds the lessee to rebuild in case of loss by fire, whilst the former is an obligation not to hold over. That distinction is also enforced in Phillips v. Stevens, 16 Mass., 238.

The covenant in Warner v. Hitchins, 5 Barb., 667, was, "at the expiration of the lease, to surrender up the possession of the premises in the same condition they were in at the time of making the lease, the natural wear and tear excepted." The property was destroyed by fire. The question was whether the loss should fall upon the lessee. The leading cases in this country and England were carefully considered, and the principle taught by them is said to be, that whenever liability has attached to the lessee, he has entered into an express "covenant to repair," and in those cases where the lease contained a covenant to surrender the premises in the same condition, or in as good condition, or in as good plight as at the commencement of the term, this covenant has not been noticed by the court as important; but the covenant to repair has been made expressly the basis of recovery.

In early times, when there were no covenants on either side about rebuilding, and there was a casual destruction, courts of equity restrained the lessee from collecting rents after such losses, or apportioned them according to the diminished value of the property. But now the rule is settled; if there is a stipulation to pay rent, the lessee cannot set up such loss, and the lessor must bear the injury to the reversion.

In a later case in New York, in 1867, McIntosh v. Lown, 49 Barb., 554, 555, after affirming the principle of the former cases, the court said some authorities hold that where the covenant is to repair and leave the premises in the same plight he found them, or words to that effect, the tenant is merely bound to use his best endeavors to keep them in the same tenantable order; and by such covenants he is not bound to rebuild when there has been an accidental destruction.

But when the covenant is to repair, or keep in repair generally, without the qualifying words, the tenant, according to all the authorities, must rebuild.

In Wainscott v. Silvers, 13 Ind., 500, the court declares that the lessee is not responsible for buildings accidentally burned down during the term, unless he has expressly agreed or covenanted to repair. It is not enough that he covenanted to restore or surrender the premises in the same repair or condition they were in when he entered.

Howeth v. Anderson, 25 Tex., 558, 571–3, supports the general doctrine laid down in the cases cited.

We have referred to these cases out of a great number germain to the subject, because the covenants in each of them were closely analagous to that in the case before us.

We deduce these principles from the authorities : First, that the lessee is not responsible to the lessor for the accidental, casual destruction by fire of the property demised, unless by his covenants he has made himself so.

In construing the covenants, the cardinal rule is the intention of the parties ; and the courts will not extend or enlarge the obligations of the lessee for such losses beyond the plain meaning and intention of the parties. If there is not an express stipulation to rebuild or restore edifices and structures destroyed by casualty, or some covenant which is equivalent thereto, such as a covenant to " uphold and repair " or to " repair," then the loss must fall upon the reversioner, and not upon the lessee.

And, lastly, a covenant to redeliver or restore to the lessor in the same plight and condition, usual wear and tear excepted (or other words of like import), does not bind the covenantor to rebuild in case of casual destruction by fire, or impose the burden of the loss on him.

The contemplation of the parties to such a covenant, applied to a house or a saw mill, machinery and appurtenances, is, that the lessee will take ordinary, reasonable care of the property, according to its nature ; and that he will surrender possession when his

right to enjoy has expired. It is not within the intendment, and according to general understanding, that such stipulation imposes upon the tenant the responsibility of an insurer. If that greater risk is assumed, it must be clearly and explicitly set forth in the contract.

We think, also, that it would be unwise, and would result in injustice, to push the responsibility of lessees for losses occurring from casualty and accidents, without fault or negligence on their part, further than it has (as we have seen) been carried by the adjudications.

Recurring to the covenant, as stated in the first count of the declaration, and bringing it to the test of the principle expounded and applied in the cases, we see in it no agreement to restore the property, if casually consumed, by rebuilding and repairing; nor are these words of equivalent import. The extent of the covenant of the plaintiffs in error was not to hold over after the expiration of the term, but to surrender the property without damage, except the usual wear and tear.

We think that the second plea to the first and second counts, respectively, is a good answer thereto.

If the lessees were not under an obligation to rebuild the tenement and replace the other property, plainly they could not be held for the rent, after the expiration of the term, continuously onward until they did repair and rebuild, as claimed by the plaintiff as an element of his damages; nor, of course, could they be accountable for the cost of repairing and restoration.

The views which we have expressed go to the foundation of the plaintiff's right of recovery, and make it unnecessary to consider the competency and admissibility of the testimony offered on the trial, or any of the questions raised on the trial. The other rulings in the pleadings are correct. For the error in sustaining the demurrer to the second plea to the first and second counts respectively, the judgment is reversed, and judgment here overruling said demurrers, and cause remanded for another trial.