## 27559.   WILLIAMS v. BERNATH.

DECIDED NOVEMBER 28, 1939.   REHEARING DENIED DECEMBER 14, 1939.

*James A. Branch, Thomas B. Branch Jr.,* for plaintiff.
*A. S. Grove,* for defendant.

MacINTYRE, J.   The petition sought to recover on an action ex contractu, arising out of a contract of lease, and sought to recover for a breach of the contract.   The contract in the instant case provided in part that the lessor leased to the lessee a certain described parcel of land for a term of five years at a stipulated rental; that "for and in the consideration of the rental mentioned aforesaid, the lessor agrees to rent to lessee, without additional charge," certain described personal property including machinery, a boiler, an engine, pulleys, hangers, fixtures, etc.; that "lessor hereby

agrees to repair said property and to deliver said premises mentioned aforesaid to lessee in a tenantable condition. . . (3) Lessee agrees to repair at his own expense the personal property leased to him, with the exception of the boiler in an amount not to exceed one hundred ($100) dollars and the lessor will make repairs to said boiler and attachments thereto in an amount not to exceed one hundred ($100) dollars in addition to the amount expended by lessee. (4) Lessee agrees to redeliver the said property (personal) mentioned aforesaid to said lessor at the termination of this lease in same condition, less natural wear and tear. (5) Should the premises be destroyed by fire or so damaged by fire as to become untenantable, this lease shall cease and any sums paid to said lessor by way of advancement of said rent shall be refunded to said lessee, pro rata. However, if said premises become only partially untenantable, the rent shall be apportioned, conditioned as to the use that the said lessee has of said premises. (6) Lessor agrees to keep said premises in a tenantable repair as herein set forth."

■ Our Code, § 20-704 (4), declares: "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." The construction which we give the contract in question is that the lessee was to so repair and keep in repair the real and personal property therein referred to as to leave the said property in the same state of repair as when he received it, less natural wear and tear. McIntosh v. Lown, 49 Barb. (N. Y.) 550, 555. In the absence of any express agreement or covenant, "at common law a tenant for years must treat the premises in such a manner that no substantial injury shall be done them through any negligent or wilful misconduct on his part, and must make fair and tenantable repairs" (Van Wormer v. Crane, 51 Mich. 363 (16 N. W. 686, 47 Am. R. 582), but where there was an express covenant "to repair," or "to keep in repair," the old English and American cases have held that such covenant "to repair" or "to keep in repair" means that a building or property (not necessarily the same building or property), must be returned at all events, and, if destroyed by fire, must be rebuilt. The case of *Myers* v. *Myrrell,* 57 *Ga.* 516, states this principle. In that case the lessee covenanted, according to the lease, "to place said demised premises in serviceable condition and repair, and to keep them in such serviceable condi-

tion and repair while he continues to occupy the same and during the continuance of this lease, and to return the same . . in such serviceable condition and repair at the end and expiration of this lease." The court stated that if the stipulation of the covenant could not be otherwise performed that the leased property must be rebuilt.

The instant case differs from that case in that here the lessee was only to return the same property at the expiration of the lease in the same condition that it was in when turned over to him at the execution of the lease. There, he was not necessarily to return the same property in the same condition that he received it, for at the time he received it it might have been that the property was not in a serviceable condition, and if so he was not authorized to return to the lessor the same property in the same condition as it was in when received, but the property to be returned by the lessee was to be property different, at least, in that instead of being nonserviceable property at the time of its return to the lessor (as it was at the time he received it), it must be serviceable at the time of its return at the termination of the lease. The decided cases have said that where the covenant is "to repair" or "to keep in repair" generally etc. the property without the qualifying words mentioned (to return the same property in the same condition or words to that effect), the obligation to rebuild in case of destruction of the leased property by fire or otherwise falls upon the lessee.

To illustrate this principle: where there is such a covenant "to repair" or "to keep in repair" a fence on leased premises, and the fence is destroyed by decay or by fire, the fence must be rebuilt, because such a covenant was held to be an express covenant to return the leased property with a fence, although none of the specific materials should be in the fence that were in it when it was received; yet, a fence must be returned with the property. But many of the courts of this country have generally begun to say: "there are strong considerations that would render the courts averse to extending the doctrine of the tenant's liability in any degree beyond the decided cases." Levey v. Dyess, 51 Miss. 501, 507 (supra). While the courts say that they will follow the adjudicated cases, yet they in effect say: "We think, also, that it would be unwise, and would result in injustice, to push the responsibility of lessees for losses occurring from casualty and accidents,

without fault or negligence on their part, further than it has (as we have seen) been carried by the adjudications" (Levey *v.* Dyess, supra) ; and in effect hold that if the promise is "to return the same building or property," or "the same building or property in the same condition, less natural wear and tear," the gist of each of these statements is that the lessee is to return, at the expiration of the lease, the same property he received at the execution of the lease.

If the words "to repair" or "to keep in repair generally" the building or property rented, are qualified by the further words "to return in the same condition" (or words to that effect), and if the building or property is destroyed by fire, it is of course impossible to return the same building or property, and the law, not requiring one to do an impossible thing, therefore says that a reasonable construction of this covenant is that the obligation is subject to an implied condition that the building or property shall be in existence at the expiration of the lease, and that if the building or property is destroyed by fire the lessee is not liable under the contract for the return of the property or its value. 2 Restatement of Law of Contracts, §§ 460, 859, 863 (6). "There seems little doubt that this implication tends to further the great object of making the legal construction such as to fulfill the intention of those who entered into the contract. For in the course of affairs men in making such contracts in general would, if it were brought to their minds, say that there should be such a condition." (That is, the implied condition that the building or property shall be in existence at the expiration of the lease.) Taylor *v.* Caldwell, 122 England Reports, Full Reprint, 309, 312; Young *v.* Leary, 135 N. Y. 569, 577 (32 N. E. 607). This principle was well illustrated in Levey *v.* Dyess, supra, where it was said that A's covenant was to return to B his slave *well clothed* on a named date. The slave having died, the court said that by looking at the mere words A was bound, at all events, to return the slave; but such could not have been the intention of the parties.

It is true that a party can, if he so pleases, bind himself to deliver, notwithstanding the thing which he contracts to deliver may perish, but in the instant case we do not think such was the intention of the parties. The lessee did not intend to become an insurer, nor was he an insurer. "A clause, in a lease of personal

property, providing that at its termination the lessee should 'return said property in as good condition as it now is, usual wear excepted,' does not make the lessee liable in damages where the property has been destroyed by fire without fault on his part." Seevers v. Gabel, 94 Iowa, 75 (62 N. W. 669, 27 L. R. A. 733, 58 Am. St. R. 381). The plaintiff's obligation to furnish the property for use by the defendant is quite as explicit as the defendant's obligation to return it. There was no adequate consideration moving to the defendants as insurers of the property. The use and the rent were equivalent. Therefore, the defendant would have nothing for this extraordinary liability; a liability that should not, and we think would not, be left to doubtful construction if intended, but would be plainly expressed in the contract. Seevers v. Gabel, supra. The lessee obviously intended to promise to make on the leased property, both real and personal, such ordinary repairs as reasonable care would dictate in order that the same property might be returned in the same condition as it was when received, less ordinary wear and tear; that is, to return the property without damage, natural wear and tear excepted. Arnold-Evans Company v. Hardung, 132 Wash. 426 (232 Pac. 290, 45 A. L. R. 9 and notes); Warner v. Hitchins & Leonard, 5 Barb. (N. Y.) 666; Warren v. Wagner, 75 Ala. 188, 200, 201 (51 Am. R. 446); Burdick Tire & Rubber Co. v. Heylmann, 79 Ind. App. 505 (138 N. E. 777, 779); Link v. Hathway, 143 Mo. App. 502, 516 (127 S. W. 913); Steele v. Buck, 61 Ill. 343 (14 Am. R. 60, 64); David v. Ryan, 47 Iowa, 642; Whitworth v. Erie Railway Company, 87 N. Y. 413, 420; Maggort v. Hansbarger, 8 Leigh (Va.) 532.

The case of Davis v. George, 67 N. H. 393 (39 Atl. 979), relied on by plaintiff, is distinguishable from the instant case. In that case the lessee unqualifiedly agreed to return any personal property (furniture and supplies) of the value of $1137.50, the appraised value of the personal property rented. Here, the same property was to be returned in the same condition, less natural wear and tear. Under the petition, construed most strongly against the pleader, the ruling of the trial court that the lessee was not bound under the contract to return or make compensation for the leased property where it was destroyed by fire was correct.

■ The petition also alleged that "following the fire, however, said defendant did not immediately vacate said premises, but con-

tinued to occupy the same until the 28th of October, 1936" (the fire having occurred on July 28, 1936), and that "as provided by said lease the rent of said premises for" the three months was $125 per month and the defendant was indebted to the plaintiff in the amount of $375. This court held in the case of *Tuten* v. *Towles,* 34 *Ga. App.* 465 (129 S. E. 906) : "Where a contract of rental has been terminated by mutual agreement between the parties before the expiration of the term, the tenant is not liable thereunder for rent accruing from the occupancy of the premises after the termination of the contract." In the instant case there was a lease which terminated before the end of the term by reason of a fire which, by mutual agreement, terminated the lease. Under the ruling in the *Tuten* case, supra, as applied to the facts of this case, we do not think that the plaintiff was entitled to the three months' rent at $125 per month as stipulated in the contract, and the judge was correct in ruling that the defendant was not liable for the three months' rent.

■ The petition further alleged that the parties agreed that defendant was to pay petitioner 23 cents per square foot for the concrete floor to be removed which was necessary to the use of the premises; that payment was to be made at the termination of the lease; that defendant removed 160 square feet of concrete floor but since the termination of the lease he failed to pay for same and was therefore indebted to petitioner $36.80 by reason of the alteration in the floor. The defendant filed special demurrers to that portion of the petition on the ground that it was a mere conclusion of the pleader, with no sufficient allegations of fact to support the same; that it was not shown when, where, or in what manner (whether oral or in writing) the alleged agreement was entered into by plaintiff and defendant; that the allegations were indefinite, vague, uncertain, and were not set forth with sufficient particularity to enable the defendant to answer and defend the same; that the hole was not sufficiently described nor was it shown when, where, or in what manner the defendant cut the hole and damaged the floor.

It is not necessary to allege whether the contract in question is in writing or parol, for the Supreme Court has decided: "Bill to enforce contract concerning an interest in lands [required by the statute of frauds to be in writing] not demurrable because it does

not state whether the contract was or was not in writing." *Piercy* v. *Adams,* 22 *Ga.* 109; *Draper, Moore & Co.* v. *Macon Dry Goods Co.,* 103 *Ga.* 661 (30 S. E. 566, 68 Am. St. R. 136); *Georgia, Florida & Alabama Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180, 182 (76 S. E. 1063). It is the rule that "A declaration must aver a time when every material, traversable fact alleged in it transpired. If it fails to do so, it is subject to special demurrer on that ground." *City Council of Augusta* v. *Marks,* 124 *Ga.* 365 (52 S. E. 539); *Warren* v. *Powell,* 122 *Ga.* 4 (49 S. E. 730). The defendant contends that it is not shown when the alleged agreement was made. The contract here was one to be performed in the future, and it was alleged that performance was to be at the termination of the lease, which, as appears elsewhere in the petition, was July 28, 1936, the date of the fire. Nor was the demurrer calling for information as to the description of the hole meritorious. This item was based upon the amount of cement (160 square feet) taken from the floor and the defendant agreeing to pay a stipulated price therefor (23 cents per square foot), and was not based upon the damage that the hole might have done to the remaining part of the building, or the cost of filling in the hole and restoring the floor. We think the allegations as to this contract relating to the cutting of the hole in the floor and removing the cement, construed most strongly against the pleader, are not mere conclusions, and we further think they sufficiently informed the defendant as to the terms and conditions thereof, the time of performance, and price to be paid for the concrete taken from the floor. The judge erred in sustaining the special demurrers to the paragraphs in the petition relating to this contract. The plaintiff alleged the number of square feet of cement taken from the floor and the amount per square foot to be paid. He set out a cause of action for $36.80. The general demurrer should not have been sustained for if the plaintiff was entitled to recover any amount the general demurrer should have been overruled. For this reason alone the judgment is

*Reversed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. In his motion for rehearing the plaintiff in error contends that this court erred in holding that the contract contained the implied condition that the lessee was not obligated to return the personal property unless the same was in existence at the time

of the termination of the lease. Intention or meaning may be manifested or conveyed either expressly or impliedly. We recognize the principle of law, urged by the plaintiff in error as here applicable, that no terms or conditions can be implied which are inconsistent with the expressed provisions of the contract and which are plain in their meaning. However, "The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made. Therefore, whatever may fairly be implied from the terms or nature of an instrument is, in judgment of law, contained in it." 12 Am. Jur. 766, § 239. "The general ground of a legal implication is that the parties to the contract would have expressed that which the law implies had they thought of it." Cowles v. Morris & Company, 330 Ill. 11 (161 N. E. 150) ; 17 C. J. S. 779 (40), § 328. We can not but think that there existed in the instant case the implied condition that the parties intended that the personal property should be in existence at the end of the term. Especially do we think this was the intention of the parties in the light of the express provision in the contract with reference to the "premises" that "should the premises be destroyed by fire or so damaged by fire as to become untenantable, this lease shall cease."

The cases of *White* v. *Molyneux*, 2 *Ga.* 124 and *Lennard* v. *Boynton*, 11 *Ga.* 109 are distinguishable from the instant case in that in those cases nothing could arise by implication from the language used in the contracts (notes) which would relieve the defendant from liability thereunder in the event of destruction or death of the subject-matter of the contract, whereas in the instant case such language does exist from which the implication arises. The other contentions in the motion for rehearing are but reiterations of the original contentions of the plaintiff in error which were fully answered in the body of the opinion. The motion for rehearing is therefore denied.

*Broyles, C. J., and Guerry, J., concur.*