A98A1319. TRAVELERS INSURANCE COMPANY et al. v. LINN.
(510 SE2d 139)

RUFFIN, Judge.

Travelers Insurance Company (Travelers) and Windsor at River Heights Limited Partnership (Windsor) sued Adrienne Linn and others for damages sustained when Linn's apartment was damaged in a fire. The trial court granted Linn's motion for summary judgment, and plaintiffs appeal. For reasons discussed below, we affirm.

"Summary judgment is appropriate when the court, viewing all evidence and drawing all inferences in a light most favorable for the nonmovant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). 'A defendant who will not bear the burden of proof at trial need not affirmatively disprove the non-moving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).' Id." *Heinsimer v. Wellington Leisure Products*, 231 Ga. App. 579, 581-582 (500 SE2d 7) (1998).

The record shows that Linn leased an apartment at a complex owned by Windsor. Mary and Irving Walker also lived at the apartment with their three children. Although Linn was the sole lessee, Mary and Irving Walker were identified in the lease as "occupants other than lessee." Sometime before midnight on December 23, 1995, the Walkers' 15-year-old child, Lee Walker, started a fire in Linn's fireplace. At the time, Linn and Mary Walker were in the kitchen. One of the other children told Mary Walker that Lee had started a fire, and Mary told Lee to extinguish the fire. Mary called to her husband, who was in the shower, and he also told Lee to extinguish the fire.

Lee extinguished the fire with a bottle of water, cleaned the fireplace, and put the ashes into a cardboard box, which he set on the wooden deck outside the apartment. He also placed the burned logs outside with the remainder of the firewood. Neither Mary Walker nor Linn saw the child place the logs or ashes outside. Later that night, Linn and the Walkers awoke to find the apartment on fire. The fire completely destroyed Linn's apartment and caused severe damage to the remainder of the building. The fire department investigator later determined that the fireplace debris placed on the deck was the likely source of the fire.

After the fire, Linn and the Walkers moved into a new apartment in the complex. On December 27, 1995, Linn signed a new lease

for this second apartment, and her security deposit was transferred to the new apartment. On April 11, 1996, when this second lease expired, Windsor returned Linn's security deposit, less certain amounts for damage to the second apartment as well as for some outstanding rent.

On March 15, 1996, Travelers' attorney sent Linn a letter stating that she was liable for over $800,000 in damage to the original apartment building as a result of the fire. On December 19, 1996, Travelers filed suit against Linn and the Walkers for damage to the original apartment building. Windsor was subsequently added as an additional plaintiff. On November 25, 1997, the trial court granted Linn's motion for summary judgment, leaving the claims against the Walkers outstanding. The trial court's order did not indicate the basis for granting summary judgment.

1. *Security Deposit Statute*. Linn contends that plaintiffs are precluded from asserting any claims relating to the fire damage because Windsor failed to comply with its obligations under the security deposit statute, OCGA § 44-7-30 et seq. Because Windsor never withheld Linn's security deposit due to the damage to the first apartment, we disagree.

OCGA § 44-7-33 (b) provides that "[w]ithin three business days after the date of the termination of occupancy, the landlord or his agent shall inspect the premises and compile a comprehensive list of any damage done to the premises *which is the basis for any charge against the security deposit* and the estimated dollar value of such damage." (Emphasis supplied.) OCGA § 44-7-34 (a) states that "[i]n the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons *for the retention thereof.*" (Emphasis supplied.) OCGA § 44-7-35 (b) provides that "[t]he failure of a landlord to provide each of the written statements within the time periods specified in Code Sections 44-7-33 and 44-7-34 shall work a forfeiture of all his rights to withhold any portion of the security deposit or to bring an action against the tenant for damages to the premises."

It is undisputed that plaintiffs did not provide Linn with a list of damages to the first apartment within three days of the termination of the lease on such apartment. The first written notice to Linn regarding the fire damage was the March 15, 1996 letter from plaintiffs' counsel notifying her that she was responsible for over $800,000 in damages. Linn argues that because plaintiffs did not give her the written statements required by OCGA §§ 44-7-33 and 44-7-34, plaintiffs have forfeited their right to sue her for damages to the property.

However, because plaintiffs did not retain Linn's security deposit to cover the damages caused by the fire, they were never obligated to

provide her with any of the written statements listed in the statutes. OCGA § 44-7-33 (b) requires the landlord to provide the tenant with a list of any damage "which is the basis for any charge against the security deposit." Because the damage to the apartment did not form the basis for any charge against Linn's security deposit, no such list could have been provided. Similarly, OCGA § 44-7-34 (a) requires the landlord to provide the tenant with a written statement "listing the exact reasons for the retention [of the security deposit]." Since there was no retention of the security deposit in this case, plaintiffs had no obligation to provide, and indeed could not have provided, a statement giving the reasons for retention.

"[T]he intent of [the security deposit] legislation is only to prevent the wrongful withholding of security deposits from tenants by landlords." *Kimber v. Towne Hills Dev. Co.*, 156 Ga. App. 401, 402 (3) (274 SE2d 620) (1980). Where, as here, the landlord does not withhold a security deposit, but instead proceeds against the tenant solely by means of a civil lawsuit, the fundamental purpose of the statute is fulfilled. The forfeiture provisions of OCGA § 44-7-35 are clearly designed to further this purpose — i.e., to ensure that landlords do not wrongfully withhold security deposits — and are not designed merely to place additional procedural hurdles in the path of a landlord seeking to recover damages due to a tenant's negligence.

Moreover, "forfeitures and penalties are not favored and statutes relating to them must be strictly construed, and in a manner as favorable to the person against whom the forfeiture or penalty would be exacted as is consistent with fair principles of interpretation." *Moore v. Beneficial Finance Co.*, 158 Ga. App. 535, 537 (1) (281 SE2d 293) (1981). Construed in such a manner, OCGA § 44-7-35 (b) works a forfeiture only when the landlord fails to provide written statements that it is *required* to provide under OCGA §§ 44-7-33 and 44-7-34. Where the landlord does not retain a security deposit and is therefore not required to provide such written statements to the tenant, its failure to do so cannot work a forfeiture under OCGA § 44-7-35 (b).

2. *Negligence.* Plaintiffs contend that Linn was negligent in failing to ensure that the fireplace ashes were disposed of properly. They assert that Linn is responsible for Lee Walker's actions because she was acting in loco parentis at the time of the fire and thus had a duty to supervise Lee's actions. However, the evidence clearly shows that Lee was under the direct supervision of his parents, Mary and Irving Walker, when he cleaned the fireplace and placed the logs and ashes on the deck and was acting pursuant to their instructions. Because Linn had no duty as a parent to supervise Lee's actions, she cannot be held liable under this theory. See *Batchelor v. Brown*, 226 Ga. App. 113 (486 SE2d 53) (1997).

Moreover, there is no evidence that Linn was negligent in supervising Lee's disposal of the ashes. As mentioned above, Lee's parents were present in the apartment when Lee started the fire, and it was pursuant to their instructions that he extinguished it. There is nothing in the record to show that Linn could not reasonably rely on the Walkers to supervise their own 15-year-old child in such a situation. Indeed, the apartment's own rules and regulations, incorporated into the lease, state that "[a]ll parents shall be held responsible for their own children's actions and see that they, too, abide by the Community Rules and Regulations." Nothing in the record indicates that Linn should have foreseen that Lee would not merely extinguish the fire, but would place the ashes on the deck. Accordingly, there is no evidence that Linn acted unreasonably, and the trial court properly granted summary judgment to Linn on plaintiffs' negligence claims.

3. *Breach of contract.* Plaintiffs contend that "[t]he trial court erred in finding no triable issues regarding Linn's breach of contract." In their brief, plaintiffs clarify and limit the scope of this enumeration to the following two issues: (1) whether Linn was liable under the contract for Lee Walker's actions and (2) whether Linn breached the contract by allowing combustible material on the premises. See *Mauldin v. Weinstock,* 201 Ga. App. 514, 517 (3) (411 SE2d 370) (1991) (brief clarifies and limits scope of enumeration); *Rolleston v. Cherry,* 226 Ga. App. 750, 756 (6) (487 SE2d 354) (1997); Court of Appeals Rule 27 (c) (2).

(a) *Liability for Walker's actions.* Plaintiffs point to several lease provisions they assert make Linn liable for damages caused by Lee Walker's actions, even in the absence of any individual negligence on the part of Linn. First, they note that paragraph 24 of the lease provides that the lessee "must surrender possession of the apartment premises in good condition with the exception of reasonable wear and tear." The question thus arises whether this provision renders Linn liable where the premises were destroyed by fire due to the negligence of another.

"The question whether a covenant as to the condition in which the tenant is to return the premises at the termination of the lease imposes a duty to rebuild in case of the accidental destruction of the premises by fire or otherwise depends on the determination of the real intention of the parties as revealed by the language of the covenant and the circumstances of the case. The court will lean toward a construction of the covenant which does not impose such liability on the tenant." (Footnotes omitted.) 51C CJS, Landlord & Tenant, § 412, p. 1055.

In *Williams v. Bernath,* 61 Ga. App. 350, 353-354 (1) (6 SE2d 184) (1939), this Court held that such a covenant does not require a tenant to rebuild leased premises in the event of their destruction by

fire. "If the words 'to repair' or 'to keep in repair generally' the building or property rented, are qualified by the further words 'to return in the same condition' (or words to that effect), and if the building or property is destroyed by fire, it is of course impossible to return the same building or property, and the law, not requiring one to do an impossible thing, therefore says that a reasonable construction of this covenant is that the obligation is subject to an implied condition that the building or property shall be in existence at the expiration of the lease, and that if the building or property is destroyed by fire the lessee is not liable under the contract for the return of the property or its value." Id. at 353 (1). In reaching its decision, the Court stated that "[t]he lessee did not intend to become an insurer, nor was he an insurer. 'A clause, in a lease of personal property, providing that at its termination the lessee should "return said property in as good condition as it now is, usual wear excepted," does not make the lessee liable in damages where the property has been destroyed by fire without fault on his part.' [Cit.]" Id. at 353-354 (1).

In *Townsend v. Morris*, 222 Ga. 242, 243 (2) (149 SE2d 464) (1966), the lease contained a provision similar to the one in this case, requiring the tenant to deliver the premises at the expiration of the lease " 'in as good repair as when first received, natural wear and tear excepted.' " After the premises were destroyed by fire, the landlord sued the tenant for breach of this provision. The Supreme Court, relying on *Williams*, sustained the dismissal of the lawsuit, stating that the lease provision "relieved the tenant of any possible obligation to restore the burned premises." Id. at 243 (2).

In this case, as in *Williams* and *Townsend*, the apartment was destroyed by fire, and the fire was not the result of Linn's negligence. Accordingly, this provision of the lease does not provide a basis to hold Linn liable for damage to the apartment.

Plaintiffs also rely on paragraph 12 of the lease, which states that "[i]n the event Lessee fails to pay on or before the due date thereof any payment owing to Lessor under the terms of this lease, whether the same constitutes rent, late charge, payment for damage to property, reimbursement or indemnity for claim of damage to property, or otherwise, . . . [t]hen, in such event, Lessor may obtain possession of the apartment by summary proceedings or by any other lawful means and/or may sue for damages for breach of lease." However, this paragraph merely sets forth the lessor's remedies in the event the lessee fails to make any payment "owing to Lessor under the terms of this lease," and does not constitute an independent basis for the lessee's liability.

Finally, plaintiffs note that paragraph 8 (a) of the lease provides that Linn shall "repair . . . any and all broken glass or other damage in and to the apartment caused by Lessee, his guests, invitees or

licensees." Plaintiffs contend that Lee Walker was an invitee or licensee of Linn, and that Linn is therefore liable for any damages caused by Walker.

The terms "licensee" and "invitee" are not defined in the lease. These terms are generally used in premises liability cases, in analyzing the duty owed by a property owner to one who comes onto his premises. See OCGA §§ 51-3-1; 51-3-2. In this context, "whether a person is an invitee or a licensee depends upon the nature of his relation or contact with the owner or tenant of the premises. If the relation solely benefits the person injured, he is at most a licensee. If, on the other hand, the relation was of mutual interest to the parties, he is an invitee." (Punctuation omitted.) *Chatham v. Larkins*, 134 Ga. App. 856, 857-858 (2) (216 SE2d 677) (1975).

In this case, Lee Walker lived at the apartment along with his parents. The lease identified the parents as "occupants other than lessee." Delaine Pierce, Windsor's representative, testified that an "occupant" is someone other than the lessee who permanently resides in the apartment, and that such a person is different from a visitor. Although Lee Walker was not listed as an occupant, Pierce testified that failure to list children as such did not constitute a breach of the lease.

As an occupant of the apartment, Lee Walker does not fit squarely into the category of either licensee or invitee. These terms are generally understood to refer to individuals who come onto the property of another for business or social reasons, and not to be permanent residents. The language of paragraph 8 (a) supports this interpretation, with its reference to "guests, invitees or licensees," but not to "occupants," a term which is used earlier in the lease. If the lessor had intended to make Linn responsible for the negligent acts of other occupants of the apartment, it could have easily included the term "occupant" in paragraph 8 (a). Construing the lease against the drafter, we cannot say that Lee Walker fell within the lease's definition of a licensee or invitee. See *Marjon Assoc. v. Leasing Intl.*, 174 Ga. App. 679, 680 (1) (331 SE2d 20) (1985) ("contents of a contract are to be construed most strongly against the drafter if construction of any part is in doubt").

(b) *Combustibles*. Paragraph 8 (b) of the lease provides that Linn will comply with the rules and regulations of the apartment complex, which are attached to the lease. Rule H of the attached rules and regulations states that "Lessee shall not bring into or keep any explosive or obnoxious substances, excelsior or any other inflammable or combustible matter upon the Leased Premises, in any storage space and/ or building of which it is a part." Plaintiffs contend that the fireplace debris constituted "combustible matter," and that Linn breached the contract by allowing it to be placed on her deck.

This contention is without merit. As an initial matter, it does not appear that the term "combustible matter," as used in the lease provision, was intended to include a substance such as fireplace debris. Although incompletely extinguished ashes may indeed reignite, plaintiffs do not contend that the lease prohibits a tenant from starting a fire in her fireplace (which is included with the apartment). Thus, it is clear that ashes from an extinguished fire do not constitute prohibited "combustible matter," at least so long as they remain in the fireplace. Nothing in the lease provision indicates that whether an item is considered combustible depends on its location within the premises. Construing the lease provision against the drafter, and in favor of Linn, it therefore does not appear that the fireplace debris constitutes prohibited combustible matter as contemplated by the lease. See *Marjon Assoc.*, supra.

Moreover, even assuming that the fireplace debris did in fact constitute combustible matter *after* it was placed on the deck, the record shows that the debris was placed there by Lee Walker, not by Linn. There is no evidence that Linn was even aware Walker had placed the debris on her deck. As discussed above, the lease does not render Linn responsible for all of the actions of other occupants. Thus, there is no evidence that Linn brought or kept combustible matter on the premises in violation of the lease provision.

For the above reasons, the trial court did not err in granting summary judgment to Linn on plaintiffs' breach of contract claim.

4. Plaintiffs also contend that the trial court erred in finding that they waived compliance with certain lease provisions and in finding a waiver of subrogation in favor of Linn. The trial court made no such findings in its summary judgment order. Because the grant of summary judgment was proper for reasons discussed above, it is not necessary to consider whether such findings would have been proper.

*Judgment affirmed. Pope, P. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED DECEMBER 4, 1998.

*Cozen & O'Connor, David M. Bessho, for appellants.*
*Webb, Carlock, Copeland, Semler & Stair, Edward A. Miller, Samuel R. Arden, for appellee.*