[Civ. No. 17628.   First Dist., Div. One.   May 9, 1958.]

ARTHUR TESCHE et al., Respondents, v. BEST CONCRETE PRODUCTS, INC. (a Corporation) et al., Appellants.

Woodrow W. Kitchel and D. W. Brobst for Appellants.

Quaresma & Rhodes for Respondents.

WOOD (Fred B.), J.—Plaintiffs were awarded $10,855 for the loss of their 15-year-old son Robert who suffered death in a cement mixing machine at the plant of defendant Best Concrete Products, Inc.

The company and Bernard Blondin, Sr., its employee in charge of the machine at the time of the accident, have appealed. They claim (1) a fatal variance between pleading and proof, (2) insufficiency of the evidence, and (3) giving the jury erroneous instructions.

Our examination of the record convinces us that these claims are not well founded and that the judgment should be affirmed. A summary of significant facts in evidence will serve as an answer to most of these claims.

### The Facts In Evidence

Defendant Best Concrete Products, Inc., owned a plant for the manufacture of concrete building blocks. The plant contained a cement mixer 7 feet long and about 3 feet deep. Inside it had two flat blades approximately 6 inches wide, and ½ inch thick set in a spiral. The mixer was electrically operated, and to set it in motion it was necessary to set a pull

lever switch on the main panel, a push button switch on a pole and engage the clutch. Neither switch was locked.

Defendant Bernard Blondin, Sr., worked in the evenings at Best Concrete Products cleaning up the machinery and loose cement. His 13-year-old son, Bernard, Jr., and plaintiffs' decedent 15-year-old son Robert, accompanied him on occasion. Bernard, Jr., had been going with his father to the plant for about a year, and Robert had gone eight or nine times over a period of a month or six weeks before his death. Larry Chenoweth, the yard foreman at the plant, was present on some occasions when the boys were there. The owner, Harold Best, was there on one occasion when Robert was at the plant and also had seen the Blondin boy there. Best had cautioned Blondin, Sr., in reference to his son, not to let the boy get too close to the machinery, nor to let him operate the machinery or be near it when it was in operation.

On the day of the accident, Mr. Best was not at the plant but Larry Chenoweth was. Blondin arrived at about 6 o'clock with the two boys. After changing clothes Blondin kicked the clutch lever toward the position that disengages the connection between the electric motor and the mixer. While doing it, he thought of something he wished to discuss with Mr. Chenoweth, and continued around the mixer to talk to Chenoweth. Blondin then went about his work, and the boys cleaned loose concrete from underneath and round the mold.

The Blondin boy finished first and asked his father if he could start cleaning the mixer. He had done this before. The mixer was cleaned by knocking off, with a hammer, the material that had built up on the blades and ends of the mixer. The material knocked off was then dumped through the bottom. Care must be exercised in the way the hammer is used because otherwise a blade might break. The Blondin boy had been instructed in the use of the hammer, but Robert had not.

Mr. Blondin testified that he knew his boy was in the mixer because he could hear him hammering, and he saw Robert standing near the mixer watching. Robert was facing the mixer. Mr. Blondin heard the mixer motor starting and saw Robert out of the corner of his eye going into the mixer. He did not know whether he was stepping in or falling in. He could not tell how he was facing. He ran to the side of the mixer, saw his son pushing the stop switch. He jumped into the mixer and rode the blades with his feet to stop them. Robert was in the mixer, cut in half. The blades start at almost full speed.

Bernard Blondin, Jr., testified that he got inside the mixer to clean the blades with the hammer. Robert was then standing near the mixer, facing him, watching him. Robert asked whether he could come inside and help Bernard, but Bernard told him he could not because Mr. Blondin had not cautioned him on how to do it and he might crack the blades. Bernard did not remember saying anything else to Robert, then climbed out, put the sledge hammer behind the iron gate, and then went to the switch and turned the machine on and off. He stated that this was done so the loose cement would fall to the bottom. After he had flipped the switch on and off, he heard Robert yelling his name. He did not see Robert falling into the mixer or climbing on it. The hammer was later found in the mixer.

Mr. Best testified that none of the switches nor the clutch had locks. The safety engineer of the California Division of Industrial Safety testified to the same thing; also, that it was possible to turn the blades without turning the machinery on by disengaging the clutch and using a lever.

### DISCUSSION

■ (1) *There was no fatal variance between pleading and proof.* The gist of the complaint was that defendant negligently permitted these two minors to work around and assist in the cleaning of dangerous machinery, inviting them to be on and about the premises; that these minors were too young and inexperienced to foresee the danger incident thereto; and that the injury and death of Robert resulted therefrom. We think these allegations reasonably embrace the concept of negligence upon the part of Blondin, Sr., in permitting his son to clean and operate the mixer and negligence of the son in turning the power on without taking precautions to see that no one was in such close proximity to the blades as likely to be injured. Nor have the defendants indicated that they were taken by surprise by any of the evidence which they now assert was at variance with the allegations of the complaint.

■ (2) *Defendants' attack upon the sufficiency of the evidence* is based upon the erroneous theory that the company could not be liable unless the boys were its employees, which they were not. They were invitees brought there by Blondin, Sr., the company's employee charged with the cleaning of the mixer, with the knowledge of another employee, foreman in charge of the plant or of this portion of it. Also, Kenneth Best, a stockholder and son of the president of the company, employed in a sales capacity, had seen both boys there on one

occasion; Blondin, Jr., on many occasions. Here is a sufficient basis for holding the company liable for the results which flowed from the negligence of Blondin, Sr., in permitting his son to operate this machinery, at least without close supervision, and the negligence of Blondin, Jr., in conducting that operation. Indeed, even if Blondin, Jr., were deemed not negligent, in view of his youth, that, of itself, would not exculpate his father and the company.

Defendants claim also that there is a gap in the chain of causation because it does not appear precisely how Robert got into the mixer and onto the blades. They seem to argue that there is thus a failure to prove that Robert did not voluntarily get into the mixer with knowledge of impending danger. That, in effect, is an argument that a plaintiff must affirmatively and positively disprove contributory negligence, which is not the law.

Moreover, there is the presumption that the deceased in such a case as this exercised ordinary care for his own concerns, a presumption that is not dispelled as a matter of law unless disproved by uncontradicted evidence, wholly irreconcilable with the presumption, produced by the party invoking the presumption, under circumstances which afford no indication that such evidence is the product of mistake or inadvertence. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 92-93 [286 P.2d 809]; *Ribble* v. *Cook,* 111 Cal.App.2d 903, 907 [245 P.2d 593].)

We find no such evidence in this case. Testimony that Robert was interested in machinery, was familiar with the dangers of moving machinery, and that he was last seen near the mixer, did not dispel the presumption as a matter of law.

(3) *Did the court commit prejudicial error when instructing the jury? No.*

The court read to the jury the text of sections 1290, 1291, 1292, subdivision (c), 1293, subdivision (f), and 1294, subdivision (i) of the Labor Code, prohibiting the employment of a minor under the age of 16 years or permitting or suffering him to work in certain places or under certain conditions such as "operating or assisting in operating a mixing machine" or "in any occupation dangerous to the life or limb . . . of such minor."

Defendants contend that the provisions of these code sections apply only to "employees" and were, therefore, here inapplicable because Robert was not an employee of either. They also claim that these sections are inapplicable upon the ground asserted by them that Robert did not operate the

cement mixing machine nor was he engaged in cleaning it. We think this is too narrow a view of the scope and purpose of these code sections; also, it ignores the fact that defendant Blondin's son, a mere 13-year-old who was at the time of this accident engaged in cleaning the cement mixing machine, did operate it.

It was, we believe, within the province of the jury to decide whether permitting or suffering Blondin, Jr., to do these things was negligence. The trial court told the jury that if a party to this action violated any of these cole sections or such portions thereof as are pertinent to this case, a presumption arises that such party was negligent. The court informed the jury that this presumption is not conclusive; it may be overcome by other evidence showing that under all the circumstances surrounding the event the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence; unless the jury finds that this presumption is overcome by other evidence, the jury is bound to find in accordance with the presumption; however, in this action a violation of law is of no consequence unless it was a proximate cause of or contributed in some degree as a proximate cause to any injury found by the jury to have been suffered by the plaintiff.

The court also read to the jury the text of subdivisions (b), (c) and (d) of section 3276 of the General Industrial Safety Orders of the State Department of Industrial Relations and in respect thereto gave the jury instructions similar to those given in connection with sections 1290 to 1294 of the Labor Code.

Section 3276 provides that during repair work, a machine shall be locked or steps taken to insure that the machine shall be disconnected from its source of power. Here, the controls admittedly were not locked, were not capable of being locked. If they had been locked, Blondin, Jr., could not have attempted the dangerous part of the cleaning operation, or would have been forced to turn the blades by hand. (Turning them by hand was deemed preferable by a safety engineer who testified.) Moreover, there were three separate operations that had to be carried out to put the machine in operation. The main switch had to be pulled; the button on the pole had to be pushed; and the clutch, which was right next to the machine, had to be engaged. Apparently the main switch was on and the clutch engaged during the entire operation, because Blondin, Jr., testified that he merely climbed out of the mixer, went to the pole and flipped the switch. If the

clutch had not been engaged, he probably would have seen Robert in the mixer, or dangerously close to it, before he put the machine in motion.

Defendants also argue that the safety orders were only designed for the protection of employees; hence, that Robert was not a person of the class to whom defendants owed a duty to comply with these orders. The answer to this contention is furnished by *Porter* v. *Montgomery Ward & Co.*, 48 Cal.2d 846 [313 P.2d 854], holding admissible in evidence an industrial safety order which required a center handrail on a stairway 88 inches or more in width, even though plaintiff was not an employee. She was a customer, a business invitee. The only qualification which the court in the Porter case made was in these words: ''Some safety orders, such as those regulating machinery, might be regarded as peculiarly designed to protect employees when applied to places of employment *which the public is prohibited from entering* . . .'' (P. 849, emphasis added.) Here, the boys were not prohibited from entering. They were invited to enter. Blondin, Jr., though under 16, was permitted to operate the machine, contrary to the mandate of the statute. The conclusion is impelled that the locking requirements of the safety order were intended for his benefit and protection quite as much as if he were an employee of the company, and for the protection of invitees who might be in the vicinity of the machine whether operated by an employee or by such a person as Blondin, Jr.

Finally, defendants contend the safety order is not applicable here because by its terms the control features which it requires in connection with power driven machines is for use during ''repair'' work, and that cleaning is not repairing. That is too narrow a view. ''Repair'' is defined as meaning to ''restore to a sound or good state after decay, injury, etc.''* That encompasses cleaning operations of the type here carried on including the removal of cement that has adhered to the blades and will impair their efficient operation unless and until removed.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied June 6, 1958, and appellants' petition for a hearing by the Supreme Court was denied July 2, 1958.

*Webster's New Collegiate Dictionary, 1956.