[Civ. No. 635.    Fifth Dist.    Aug. 25, 1966.]

JANET ALICE HALLIDAY, a Minor, etc., et al., Plaintiffs
and Appellants, v. JACK W. GREENE et al., Defendants
and Respondents.

Lancaster & Yorton and Burt Lancaster for Plaintiffs and Appellants.

Fitzwilliam, Memering, Stumbos & DeMers and Louis A. DeMers for Defendants and Respondents.

STONE, J.—Edward Halliday and his wife, Annette Halliday, appeal from a judgment entered pursuant to an order granting nonsuit. The appeal on behalf of their minor daughter, Janet Alice Halliday, is from a judgment entered pursuant to a defense verdict.

The action stems from injuries received and expenses incurred from a fall on an apartment staircase during a fire. Mr. and Mrs. Halliday were tenants, under a sublease from defendant Jack W. Greene, of an upstairs apartment in an eight-apartment building. Greene leased the apartment

complex from defendant Leader-Durst, a limited partnership.

Greene, a licensed general contractor, purchased unimproved land in Yolo County in 1958 and erected an apartment complex of 296 units, eight apartments to a building, four upstairs and four down. Drawing upon his experience as a licensed general contractor, he drew the plans and specifications for the complex without the aid of an architect or a professional engineer. Greene obtained a building permit before commencing construction of each individual building. Two of the buildings were constructed according to the original plans, with two outside staircases leading from a common balcony at each end of the second story to the ground below, as required by Yolo County Ordinance No. 359. After completing the two buildings, Greene obtained a variance from the Yolo County Building Department Board of Appeals to eliminate one of the staircases leading to each balcony. The remaining buildings were constructed in accordance · with the variance.

Greene operated the apartment complex, known as the Capitol City Apartments, for about one year and then sold the property to defendant Leader-Durst, which immediately leased it back to Greene. At the time of the fire, Greene was operating the complex as a general lessee and plaintiffs were his subtenants.

Plaintiffs Edward and Annette Halliday and their three minor children occupied an upstairs apartment in one of the buildings which had a single means of exit, an outside wooden staircase. On the evening of April 11, 1962, plaintiff Edward Halliday awakened, smelled smoke, investigated and saw flames shooting up through the staircase. He awakened his wife and after instructing her to leave the apartment and take the minor plaintiff, Janet, with her, he left, carrying one boy and directing the other. He and the two boys went down the staircase without injury, despite the flames. Mrs. Halliday lifted Janet in her arms and followed her husband down the staircase, but fell near the bottom, landing on Janet, whose leg was fractured. Mr. Halliday turned from his place of safety and rushed to assist his wife and daughter; he slipped on wet grass and fractured his ankle.

Plaintiffs brought this action and although they allege several causes of action only two theories of liability are pleaded: one alleges defendant Greene's negligence in construction and design of the staircase, which resulted in plaintiffs' injuries, the other, an implied warranty of fitness.

The court ruled that an exculpatory or "hold harmless" clause in their sublease precluded recovery by the adult plaintiffs, and nonsuited them. The case of the minor, unaffected by the exculpatory clause, went to the jury on the issue of negligence, and resulted in a defense verdict.

Plaintiffs' causes of action alleging an implied warranty of fitness need not detain us long. Manifestly, they were designed to obviate proof of negligence by predicating defendants' liability upon a breach of warranty. The trial court refused to instruct the jury on this doctrine, and, we think, rightly so. ▮ Although a landlord can be held to an express warranty of fitness (*Shattuck* v. *St. Francis Hotel & Apartments*, 7 Cal.2d 358 [60 P.2d 855]; *Stowe* v. *Fritzie Hotels, Inc.*, 44 Cal.2d 416, 423 [282 P.2d 890]), just as anyone can be held to a contract, the doctrine of implied warranty of fitness developed as an integral part of the law of sales has not been extended to the landlord-tenant relationship (*Stowe* v. *Fritzie Hotels, Inc., supra*, at p. 424). Thus, if plaintiffs are to recover it must be upon their causes of action framed in tort.

Plaintiffs would extend liability in tort beyond ordinary negligence and bring defective building cases within the doctrine of strict liability in tort, finding direction in the rationale of *Dow* v. *Holly Mfg. Co.*, 49 Cal.2d 720 [321 P.2d 736], which permitted the purchaser of a house to recover from the contractor who built it, for damages suffered by reason of the installation of a defective gas heater, even though there was no privity of contract between the contractor and the person injured; and *Sabella* v. *Wisler*, 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889], which held a contractor liable to "prospective home buyers" for damages caused by negligent construction. These and similar cases, say plaintiffs, have paved the way for application in defective building construction cases of the doctrine of strict liability expressed in *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897]; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]; and *Seely* v. *White Motor Co.*, 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145].

We assume that any seeming allusion to the term "strict liability" in the sense that term is used to define liability within the line of cases stemming from *Fletcher* v. *Rylands*, 3 H.L. 330 (see *Luthringer* v. *Moore*, 31 Cal.2d 489 [190 P.2d 1]; *Clark* v. *di Prima*, 241 Cal.App.2d 823 [51 Cal.Rptr. 48]), is unintended, since those cases involve an ultra-hazardous

undertaking. If we understand plaintiffs' position aright, they contend that defendant builder constructed and held out for public use apartments with defective staircases, and in this they find a parallel to the liability of a manufacturer who places a defective product on the market. If this parallel were to hold, plaintiffs would be benefitted in two respects. Strict liability in tort would relieve them from showing privity of relationship between themselves as apartment tenants and the builder. Under the facts here, privity of relationship presents no problem since the landlord was also the builder, but what is of great importance to plaintiffs is that under the doctrine of strict liability they need prove only that the staircase was defective, not that defendant builder was negligent in constructing it.

While it must be owned that some of the rationalization employed in *Dow* v. *Holly Mfg. Co., supra,* 49 Cal.2d 720, foreshadows reasoning found in the products liability cases that followed it, and also that it is true *Dow* points up its own similarity to the landmark case in manufacturer's strict liability, *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696], nonetheless *Dow* cannot be said to completely adopt strict liability in tort in construction cases. A careful reading of *Dow* and *Sabella* v. *Wisler, supra,* which plaintiffs cite as threshold cases to the doctrine of strict liability in building construction, discloses that in each case liability ultimately rests on proof of negligence.

Plaintiffs formulate their extrapolation of strict liability in tort to buildings by equating a builder holding out for public use a defectively constructed building with a manufacturer who places a defective product on the market. The injured tenant they equate with the injured consumer. This comparison of similar superficial characteristics overlooks the inherent differences between the two kinds of relationship that have motivated the development of separate legal principles governing liability in each.

In the first place, the builder or contractor is seldom in a position to limit his liability by express warranties and disclaimers and thereby defeat the recovery of an occupant injured by a defective building. In the second place, it is considerably less difficult for the occupant of a building to trace the source of a defect to the builder or the contractor than it is for a consumer to trace the source of a defect through the modern, complex system of manufacture and assembly of a product and its distribution through jobbers and

retailers. Third, and insofar as our case is concerned, the most important distinction lies in the opportunity to make a meaningful inspection of the retailed product as contrasted with inspection of a building before using it. Liability in the landlord-tenant relationship appears to be largely grounded upon the opportunity to make an effective inspection of the premises since "It is the settled rule that while a landlord is under a duty to warn the tenant of any hidden danger or defect in the leased premises of which he has knowledge [citations], there is no duty to warn the tenant of obvious and patent defects and dangers [citations]." (*Hanson* v. *Luft,* 58 Cal.2d 443, at p. 445 [24 Cal.Rptr. 681, 374 P.2d 641].)

At first blush, it would appear that where a staircase is improperly designed and constructed the defect would be patent. However, we find the distinction between a latent and a patent defect more subtly articulated in the cases than in the dictionary. For example, in *Merrill* v. *Buck,* 58 Cal.2d 552 [25 Cal.Rptr. 456, 375 P.2d 304], the question was whether a stairway to a cellar entered from a hallway door constituted a latent rather than a patent hazard. In holding that the question was for the jury to determine, the Supreme Court said, at page 558: "But 'patent' in the test of duty to warn refers to the patency of danger and not merely to exterior visibility, and the cases so hold: . . . Cases cited by defendants are distinguishable on their facts: the dangers were not merely patent but admittedly known to the tenant in full prior to the accident concerned. . . ."

So, here, it was a question of fact whether defendant Greene, who was not only the sublessor but the builder, knew, or as an experienced builder should have known, that vertical barriers between the treads of the staircase and a wooden or glass barrier alongside the handrail were necessary to prevent the spread of flames. Coupled with this was the fact that he eliminated the alternative means of escape from the upstairs apartments. Likewise, whether a sole means of escape was latent or patent to the layman-tenant was a question of fact for the jury.

Defendants contend that whether or not there was a defect, latent or patent, is immaterial as to the adult plaintiffs because of an exculpatory clause in the lease which provides, in part: "9. Tenant hereby waives all claims against Owner for damages to goods or belongings of Tenant upon or about said premises, and for injuries to Tenant, his child or children, if any, his guests, or invitees or other third persons

in or about said premises, its recreational facilities and swimming pool, from any and all causes arising at any time or in any manner, . . ."

However, the defect here constituted a violation of a safety order. If the safety order is applicable, the exculpatory clause is ineffective because Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or wilful injury to the person or property of another, or violation of law, whether wilful or negligent, are against the policy of the law."

Public policy, as expressed in section 1668, prohibits an agreement to relieve one of the consequences of his violation of the law, and this whether the violation be wilful or negligent. (*Stonehocker* v. *Cassano,* 154 Cal.App.2d 732, 736 [316 P.2d 717].)

Defendants provided only one means of escape, that is, one staircase leading from plaintiffs' upstairs apartment, but the trial court rejected plaintiffs' offer in evidence of a general industry safety order requiring two escape exits from a work area, located in a manner to provide alternate means of escape to a place of safety. The evidence disclosed that defendants had a number of permanent maintenance employees who used the staircases and porches quite regularly and occasionally made repairs within the apartments. The court held the safety order inadmissible, saying, among other things: "I feel that this Code is directed to industry; to a true work room, where you have a floor where men or women are working. I don't see any industrial, or working conditions here, for the purposes that I think this section was passed."

Defendants also argue that the work area insofar as plaintiffs are concerned is confined to the living area within the four walls of the apartment, that they can claim no right of use to the porch and staircase as an area of employment. It is idle, if not absurd, to argue that a lease of an upstairs apartment does not carry with it the right to use the only means of access. In short, the single staircase used by defendants' employees as a place of employment was also plaintiffs' means of ingress and egress to the leased premises, and an area of employment within the meaning of the Labor Code.

Defendants also question whether plaintiffs, who were tenants and not employees, were entitled to the protection of the safety order that required an alternate means of escape to a place of safety. In a leading case, *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854], the plaintiff, a

customer in a department store, slipped on water and fell while descending a staircase. There was in force a safety order requiring a center railing for any staircase more than 88 inches wide; the staircase was 96 inches wide. At page 849, the court held: "Plaintiff was entitled to the benefits of the safety order under the circumstances, and the court properly received it in evidence and informed the jury that its violation by defendant gave rise to a presumption of negligence which could be rebutted by evidence of justification or excuse." The court also approved a statement in an earlier case, *Pierson* v. *Holly Sugar Corp.*, 107 Cal.App.2d 298 [237 P.2d 28], at page 302, that "the safety orders and the provisions of the Labor Code referred to were intended not only to protect employees of defendant corporation but also as safeguards for the public generally against injury or loss of life. . . ."

In *Philips* v. *Sun-Best Fruit Distributors*, 160 Cal.App.2d 70 [324 P.2d 948], the plaintiff, an invitee, fell into a hole in the floor of an uncompleted building, and the court held he was entitled to the benefit of the safety order which provided that when a hole is framed, all four openings should be planked over or guarded by a rail. *Tesche* v. *Best Concrete Products, Inc.*, 160 Cal.App.2d 256 [325 P.2d 150], was a wrongful death action in which the decedent, an invitee 15 years of age, lost his life in a cement mixing machine being operated by the minor son of the employee whose duty it was to clean the machinery. It was held that a safety order providing safety precautions during repair of power-driven machines was applicable; "repair" was construed to include cleaning-up operations. The plaintiff in *Wiese* v. *Rainville*, 173 Cal. App.2d 496 [343 P.2d 643], was an invitee whose hand caught in a machine for wrapping articles in cellophane which the defendant was demonstrating at his plastic factory. The plaintiff was held to be entitled to the benefit of safety orders.

A subtenant brought an action against the property owner and tenant for personal injuries in *Longway* v. *McCall*, 181 Cal.App.2d 723 [5 Cal.Rptr. 818]. The tenant had installed in a store building in which he operated a barber and beauty supply business a "do-it-yourself" freight elevator which violated numerous safety regulations of the Division of Industrial Safety. The reviewing court reversed a nonsuit as to the owner and a judgment after jury verdict as to the tenant primarily on the basis of the safety orders. In *McNally* v. *Ward*, 192 Cal.App.2d 871 [14 Cal.Rptr. 260], a safety regulation in a municipal ordinance was held to be available to a

tenant as against her landlords (defective railing on rear porch of rented premises).

Of particular significance is *Gaw* v. *McKanna*, 228 Cal.App. 2d 348 [39 Cal.Rptr. 428], where an insurance company employee inspecting defendant's property pursuant to the defendant's application for insurance tripped over a tree stump concealed by grass growing through an asphalt walk. The evidence of ''place of employment'' and ''employer'' was scant. The buildings on the lot were vacant. A tenant who lived in a house on the adjacent lot owned by the defendant kept the property clean in return for an allowance on rent. He was held to be an employee, the asphalt walk a place of employment, and safety orders were held applicable.

We conclude that plaintiffs were entitled to the benefit of the safety order under the circumstances, and the court erred both in refusing to receive the orders in evidence and in failing to instruct the jury as to the effect of a violation of a safety order in accordance with the rules laid down in *Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897].

Plaintiffs urge that the same reasoning applies to an alleged violation of the county building code or ordinance specifying the construction of two stairways in buildings similar to the apartment here. The argument is untenable; defendant-builder obtained a variance from the ordinance and whether defendants complied with the terms of the variance was a question of fact for the jury.

It was error, however, to admit in evidence the minutes of the zoning board of appeals which granted the variance. The only admissible evidence in the minutes was that the variance had been granted. The expression of opinion by members of the board or of witnesses testifying before the board that the staircase under the variance met the provisions of the code, implying that one staircase was as safe as two staircases, was inadmissible opinion-evidence. In fact, it expressed an opinion that after-events proved to be completely wrong. To prove a fact in dispute by an opinion, particularly an opinion demonstrated to be erroneous, is impermissible despite its embodiment in a business record. (See *Reisman* v. *Los Angeles City School Dist.*, 123 Cal.App.2d 493 [267 P.2d 36].)

The judgments are reversed. The purported appeal from the order denying a new trial is dismissed.

Conley, P. J., and McMurray, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.