McEvers, Justice.
*456 [¶1] Steve Forster, Daniel Krebs, and Debra Krebs (collectively "Forster/Krebs") appeal from a summary judgment dismissing their claims against B&B Hot Oil Service, Inc. We conclude the district court correctly construed the language in the parties' lease agreement, as a whole, to operate as a waiver of claims against each other for damages to the leased building and the contents therein. We further conclude the provision in the parties' lease waiving any claims against the other for any loss or damage to the leased premises or property therein is unenforceable to the extent it exempts B&B Hot Oil from responsibility for a willful or negligent violation of law. We affirm in part, reverse in part, and remand for further proceedings.
I
[¶2] In October 2009, Daniel Krebs, as owner, executed a written agreement with B&B Hot Oil to lease the west half of a building in Dickinson owned by Forster and Daniel Krebs as joint tenants. B&B Hot Oil used the west half of the building to store two hot oil trucks-a 2005 truck designed and manufactured by Energy Fabrication and a 2009 "knockoff" truck built by B&B Hot Oil with help from JB's Welding through "reverse engineering" of the truck manufactured by Energy Fabrication. Each hot oil truck contained propane used in B&B Hot Oil's business. An explosion and fire in the building in January 2010, destroyed the building and its contents and extensively damaged surrounding property. An investigation revealed the explosion was caused by a propane leak from the "knockoff" truck, which, unlike the truck manufactured by Energy Fabrication, did not have an electronic failsafe control valve to shut off the flow of propane if the manual control valve failed to close. See Messer v. B&B Hot Oil Serv., Inc. , 2015 ND 202, ¶¶ 1-4, 868 N.W.2d 373 (outlining general underlying factual background and reversing summary judgment dismissal of adjoining building owners' strict products liability and negligence claims against JB's Welding for property damage).
[¶3] Several plaintiffs sued Forster/Krebs and B&B Hot Oil in this action for $378,502 in property damage caused by the explosion and fire. In October 2010, Forster/Krebs answered and crossclaimed against B&B Hot Oil for property damage relating to the destruction of the building and its contents. Forster/Krebs specifically alleged B&B Hot Oil breached paragraph 9 of the lease agreement requiring B&B Hot Oil to obtain a general public liability insurance policy naming Daniel Krebs and Steve Forster as an additional insured and requiring B&B Hot Oil to indemnify and save harmless Forster/Krebs from any and all liabilities arising from injury to persons or property. Forster/Krebs also alleged claims against B&B Hot Oil for negligence, res ipsa loquitur, and strict products liability, and asserted B&B Hot Oil improperly stored trucks containing propane in the building in violation of applicable code requirements and manufacturer's instructions. In November 2013, the district court granted Forster/Krebs' motion to amend their pleading to add JB's Welding as an additional crossclaim defendant for claims alleging negligence and strict products liability.
*457 [¶4] In December 2013, the district court granted B&B Hot Oil's motion for summary judgment and dismissed Forster/Krebs' claims against B&B Hot Oil. The court decided that Forster was a party to the lease and that Forster/Krebs waived their claims for damages to their property under waiver language in paragraph 10 of the lease. The court explained that although Forster did not sign the written lease, both Forster and Krebs were parties to the lease and bound by the waiver language because their pleading admitted that they leased space in the building to B&B Hot Oil and that they were entitled to protection as owners under the lease. The court decided Forster/Krebs' claims against B&B Hot Oil for their property damage were waived as a matter of law under the unambiguous language in paragraphs 9 and 10 of the lease. The court explained the language in paragraph 9 was a standard indemnity and hold harmless clause that was limited to B&B Hot Oil's contractual responsibility to provide Forster/Krebs with indemnity protection against liabilities to third parties and not to protect Forster/Krebs for their property losses. The court said that B&B Hot Oil satisfied its contractual obligation under paragraph 9 by securing third-party liability coverage that designated Forster and Krebs as named insureds and that B&B Hot Oil's insurer indemnified Forster/Krebs for claims by third parties. The court also determined that under paragraph 10, Forster/Krebs waived any claims they had against B&B Hot Oil for any loss to their property, including their building and its contents. The court described the allegations in Forster/Krebs' breach of contract claim:
The Court further concludes that Forster/Krebs' claims against B&B, as set forth in their Answer, Jury Demand and Crossclaim dated October 28, 2010, did not include breach of contract claims based upon paragraphs 7 (Repairs) and 12 (Environmental Compliance) of the lease and claims upon B&B's "dishonest acts." Forster/Krebs have not moved to amend their crossclaim against B&B so as to assert new claims or bases for claims. B&B clearly has not agreed that claims not included in Forster/Krebs' existing Crossclaim against B&B can be litigated by consent. Therefore, the Court reviews the pending motions on the basis of the existing pleadings.
However, for reasons set forth herein below, even if the Court were to conclude that Forster/Krebs' pleadings did include breach of contract claims based upon paragraphs 7 (Repairs) and 12 (Environmental Compliance) of the lease and claims upon B&B's "dishonest acts", such would not alter the Court's conclusion or decision on the pending motions for summary judgment.
[¶5] In May 2014, the district court denied Forster/Krebs' motions to reconsider under N.D.R.Civ.P. 59(j) and to amend their crossclaim against B&B Hot Oil to specifically include claims for breach of contract based upon paragraphs 7 and 12 of the lease and claims for "dishonest acts." The court explained the proposed amendments would be futile because the court had already concluded they would not survive summary judgment.
[¶6] In July 2014, the district court decided Forster/Krebs' crossclaim against B&B Hot Oil did not include claims for concerted action and a joint venture with JB's Welding and denied another motion by Forster/Krebs to amend their crossclaim against B&B Hot Oil to include a claim for concerted action and a joint venture with JB's Welding. The court recognized it had not yet ruled on Forster/Krebs' remaining claims against JB's Welding and granted Forster/Krebs' motion to amend their pleading against JB's *458 Welding to include claims for concerted action and a joint venture with B&B Hot Oil.
[¶7] In September 2014, the district court granted summary judgment dismissing claims by Forster/Krebs' insurer, Acuity, for subrogation against B&B Hot Oil. The court explained a subrogation claim flows directly from an underlying claim against a tortfeasor and Forster/Krebs' waiver of claims against B&B Hot Oil under paragraph 10 of the lease operated as a waiver of Acuity's subrogation claim against B&B Hot Oil. The court also explained that Acuity's policy with Forster/Krebs included language allowing Forster/Krebs to waive the right to subrogation from B&B Hot Oil.
[¶8] The district court thereafter granted summary judgment dismissing Forster/Krebs' action against JB's Welding, but the parties agreed to reinstate Forster/Krebs' negligence and strict products liability claims against JB's Welding after this Court's decision reversing the summary judgment dismissal of other adjoining building owners' strict products liability and negligence claims against JB's Welding. See Messer , 2015 ND 202, ¶ 1, 868 N.W.2d 373. Forster/Krebs and JB's Welding thereafter stipulated to voluntarily dismiss Forster/Krebs' remaining claims against JB's Welding without prejudice, and Forster/Krebs appealed from a February 2017 judgment disposing of all the claims in this action.
[¶9] We dismissed Forster/Krebs' appeal, concluding the February 2017 judgment was not final for purposes of our appellate jurisdiction. James Vault & Precast Co. v. B&B Hot Oil Serv., Inc. , 2018 ND 63, ¶ 17, 908 N.W.2d 108. We explained we had "not previously considered the extent of our jurisdiction in situations where parties have voluntarily dismissed remaining claims without prejudice to effectuate a final disposition of all the claims in a multi-claim or multi-party lawsuit to circumvent N.D.R.Civ.P. 54(b) and create a final judgment for purposes of appellate jurisdiction." James Vault , at ¶ 11. We adopted a bright-line rule for refusing to exercise appellate jurisdiction when the parties have dismissed unresolved claims without prejudice for purposes of procuring a final disposition of all the claims in a lawsuit. Id. at ¶¶ 13-14. In concluding the February 2017 judgment was not final for purposes of our appellate jurisdiction, we said the parties may not circumvent the requirements of N.D.R.Civ.P. 54(b) and manufacture finality for purposes of appellate jurisdiction by dismissing remaining claims without prejudice. James Vault , at ¶¶ 16-17. We therefore dismissed Forster/Krebs' appeal from a manufactured judgment that was not final for purposes of our appellate jurisdiction. Id. at ¶ 17.
[¶10] Forster/Krebs and JB's Welding thereafter stipulated to dismiss with prejudice all of Forster/Krebs' remaining claims against JB's Welding. The district court entered a July 2018 judgment dismissing with prejudice all of Forster/Krebs' remaining claims against JB's Welding, and Forster/Krebs appealed from the July 2018 judgment disposing of all the claims in the lawsuit.
II
[¶11] B&B Hot Oil moved to dismiss Forster/Krebs' appeal, arguing the July 2018 judgment is void because this Court did not remand for further proceedings after dismissing the prior appeal. B&B Hot Oil claims that under Albrecht v. Metro Area Ambulance , 1998 ND 132, 580 N.W.2d 583, there was no pending proceeding in the district court for entry of the July 2018 judgment and that judgment is void. B&B Hot Oil asserts neither Forster/Krebs nor JB's Welding attempted to *459 secure relief from the February 2017 judgment before entry of the July 2018 judgment and argues the time for appeal from the only final judgment in this case in February 2017, has expired.
[¶12] In Albrecht , 1998 ND 132, ¶ 4, 580 N.W.2d 583, the district court, on its own motion, granted a plaintiff's request to dismiss without prejudice her negligence claims against two defendants. For reasons not evidenced by the record, the court thereafter set the matter for trial, and after a bench trial, dismissed the plaintiff's action against the two defendants. Id. at ¶¶ 6-7. We dismissed the plaintiff's appeal from the dismissal after the bench trial, stating that once a court dismisses an action without prejudice, the action is ended and there is no longer an action pending before the court. Id. at ¶¶ 13-16. We concluded the court lacked jurisdiction to proceed with the bench trial after entering the earlier judgment dismissing the action without prejudice. Id. at ¶¶ 14-17.
[¶13] The proceedings in Albrecht , 1998 ND 132, 580 N.W.2d 583, involved a dismissal without prejudice of a plaintiff's entire action against two defendants. Here, the dismissal without prejudice of Forster/Krebs' remaining claims against JB's Welding did not result in a final judgment for purposes of our appellate jurisdiction. As we explained in James Vault , this action involves a multi-claim and multi-party lawsuit with a dismissal without prejudice of some claims against one party for purposes of manufacturing the finality of the February 2017 judgment disposing of all claims against all parties. 2018 ND 63, ¶¶ 3, 9, 15-16, 908 N.W.2d 108. We held the February 2017 judgment was not final for purposes of our appellate jurisdiction. Id. at ¶ 17. Our decision in James Vault recognized the February 2017 judgment was not final and effectively returned the action to the district court for further proceedings before the action could be deemed final for purposes of our appellate jurisdiction. See id. at ¶¶ 15-17. In adopting the stipulation by Forster/Krebs and JB's Welding to dismiss all Forster/Krebs' claims against JB's Welding with prejudice, the court ostensibly vacated the prior dismissal without prejudice. All the claims between all the parties have been finally resolved by the July 2018 judgment and that judgment is final for purposes of our appellate jurisdiction. We deny B&B Hot Oil's motion to dismiss.
III
[¶14] On appeal, Forster/Krebs raise issues in the procedural context of the district court's decisions granting B&B Hot Oil's motion for summary judgment and thereafter denying Forster/Krebs' motion for reconsideration and their motions to amend their pleadings against B&B Hot Oil.
[¶15] Our standard for summary judgment under N.D.R.Civ.P. 56 is well-established:
Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information *460 available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.
THR Minerals, LLC v. Robinson , 2017 ND 78, ¶ 6, 892 N.W.2d 193 (quoting Markgraf v. Welker , 2015 ND 303, ¶ 10, 873 N.W.2d 26 ).
[¶16] In Alerus Fin., N.A. v. Erwin , 2018 ND 119, ¶¶ 10-11, 13, 911 N.W.2d 296 (citations omitted), we described standards for a motion to amend pleadings under N.D.R.Civ.P. 15 :
"A decision on a motion to amend a pleading is addressed to the sound discretion of the district court and will not be reversed on appeal unless the court abused its discretion." A court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.
Before trial, a party may amend its pleading once either before being served with a responsive pleading or within twenty-one days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar. N.D.R.Civ.P. 15(a)(1). Other amendments are allowed before trial "only with the opposing party's written consent or the court's leave. Leave shall be freely given when justice so requires." N.D.R.Civ.P. 15(a)(2).
....
"A court does not abuse its discretion in denying a motion to amend a [pleading] if the proposed amendment would be futile[.]" In reviewing a decision on a motion to amend a pleading made in response to an opposing party's motion for summary judgment, this Court has found guidance in the federal courts' interpretation of the corresponding federal rule, stating:
"If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence."
Under Alerus , at ¶ 17, a proposed amendment to a pleading after a motion for summary judgment has been made is futile if the added claim is not supported by substantial evidence in the record and would not survive a motion for summary judgment.
[¶17] We also have recognized a court may not consider a motion to amend a pleading following a judgment of dismissal unless the court first alters, vacates, or sets aside the judgment under N.D.R.Civ.P. 59 or 60(b). Thiele v. Sec. State Bank , 396 N.W.2d 295, 297 (N.D. 1986). Here, Forster/Krebs moved for reconsideration of the summary judgment under N.D.R.Civ.P. 59(j). North Dakota *461 law does not formally recognize motions to reconsider, and motions for reconsideration are treated as motions to alter or amend a judgment under N.D.R.Civ.P. 59(j), or motions for relief from a judgment under N.D.R.Civ.P. 60(b). Kautzman v. Doll , 2018 ND 23, ¶ 9, 905 N.W.2d 744. A district court's decision on a motion to alter or amend a judgment under N.D.R.Civ.P. 59(j) rests in the court's sound discretion and will not be overturned on appeal absent an abuse of discretion. Woodworth v. Chillemi , 1999 ND 43, ¶ 7, 590 N.W.2d 446. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misapplies or misinterprets the law, or when the decision is not the product of a rational mental process leading to a reasoned decision. Estate v. Bartelson , 2019 ND 107, ¶ 13, 925 N.W.2d 416.
IV
[¶18] Forster/Krebs initially argue the district court erred in concluding Forster was a party to the written lease with B&B Hot Oil and was bound by the lease's waiver language. They argue only Daniel Krebs signed the lease as the owner of the building, and the court erred in concluding Forster/Krebs' pleading constituted an admission Forster was a party to the lease.
[¶19] During oral argument to this Court, Forster/Krebs acknowledged Daniel Krebs and Forster owned the leased property with their spouses as joint tenants. Under N.D.C.C. § 47-02-06, a joint tenancy interest is defined as an interest owned by several persons in equal shares. See 48A C.J.S. Joint Tenancy § 28 (2014) (stating that joint tenants take and hold property as though they together constitute one person; each joint tenant is seized of the whole estate and has an undivided share of the whole). We have recognized that a lease made without one joint tenant's consent or authority is valid and for the benefit of both joint tenants. See Bangen v. Bartelson , 553 N.W.2d 754, 758-59 (N.D. 1996) ; Am. Standard Life & Accident Ins. Co. v. Speros , 494 N.W.2d 599, 606-07 (N.D. 1993). Although Forster did not sign the lease, Forster/Krebs' October 2010 answer and crossclaim against B&B Hot Oil said that "Forster/Krebs further admit they leased space in the aforementioned building to defendant B&B Hot Oil." Forster/Krebs' admission in the operative pleading when the summary judgment was granted constitutes a judicial admission. See Beck v. Lind , 235 N.W.2d 239, 247 (N.D. 1975) (complaint and answer formulate issues of an action and may constitute admissions); 71 C.J.S. Pleading , § 89 (2011) (Parties are bound by their pleadings and the statements contained in a pleading are conclusive against the pleader.); 29A Am. Jur. 2d, Evidence §§ 771 - 72 (2019) (A statement of fact by a party in a pleading is a judicial admission that the fact exists as stated and is generally binding on the parties.). Moreover, Forster was a party to the crossclaim against B&B Hot Oil for breach of the lease and to a motion for a partial summary judgment determination that B&B Hot Oil breached the lease. We conclude the district court did not err in determining as a matter of law that Forster was bound by the terms of the lease.
V
[¶20] Forster/Krebs argue the district court erred in construing the lease and determining they waived all their property damage claims against B&B Hot Oil under paragraph 10, which provides:
10. Waiver of Subrogation : Anything in this lease to the contrary not withstanding, Owner and Renter each hereby waives any and all rights of recovery, claim, action or cause of action against the other, its agents, officers, directors, *462 partners, shareholders or employees, for any loss or damage that may occur to the leased premises, or any improvements thereto, or said building of which the leased premises are a part or any improvements thereto, or any property of such party therein, by reason of fire, the elements, or any other cause which could be insured against under the terms of standard fire and extended coverage insurance policies, regardless of cause or origin, including negligence of the other party hereto, its agents, officers, or employees, and covenants that no insurer shall hold any right of subrogation against such other party.
[¶21] Forster/Krebs argue that when the lease is construed as a whole, the waiver language in paragraph 10 only applies to damages resulting from tort and not to damages resulting from a breach of the lease. They assert paragraphs 7, 9, and 12 of the lease, when read as a whole and in conjunction with paragraph 10, evidence the parties' clear intent that B&B Hot Oil would be responsible for all damages from an explosion caused by the release of contaminants, pollutants, or petroleum from the trucks stored in the leased premises. They also argue the waiver language in paragraph 10 is unenforceable to the extent it purports to exempt B&B Hot Oil from responsibility for damages caused by a willful or negligent violation of law.
[¶22] The general rules of contract interpretation apply to the interpretation of leases. Kittleson v. Grynberg Petroleum Co. , 2016 ND 44, ¶ 10, 876 N.W.2d 443 ; Langer v. Bartholomay , 2008 ND 40, ¶ 12, 745 N.W.2d 649. Contracts are construed to give effect to the parties' mutual intent when the contract was formed, and if possible, we look to the writing alone to determine the parties' intent. Langer , at ¶ 12. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06. Words are given their plain, ordinary, and commonly understood meaning, unless a contrary intention plainly appears. N.D.C.C. § 9-07-09. Contract interpretation is a question of law, if the parties' intent can be determined from the writing alone. Kittleson , at ¶ 10 ; Langer , at ¶ 12. A contract is ambiguous if rational arguments can be made for different interpretations. Langer , at ¶ 12.
[¶23] The language of paragraph 10 provides that the "Owner and Renter each hereby waives any and all rights of recovery, claim, action or cause of action against the other ... for any loss or damage that may occur to the leased premises ... or said building of which the leased premises are a part ... or any property of such party therein, by reason of fire, the elements, or any other cause which could be insured against under the terms of standard fire and extended coverage insurance policies, regardless of cause or origin, including negligence of the other party hereto" and also says the owner and renter each "covenants that no insurer shall hold any right of subrogation against such other party." The specific language in paragraph 10 waives any and all rights of recovery or cause of action and does not differentiate between tort actions and actions for breach of the lease.
[¶24] Paragraph 7 deals with repairs and says the renter agrees to take good care of and "repair and maintain the premises in a manner that the premises will be returned to the Owner at the termination of this lease in the same condition as when [the renter] took possession of the premises, usual wear the only exception." Other courts have recognized that similar language about repairs is not an obligation to rebuild a totally destroyed building. See Travelers Ins. Co. v. Linn , 235 Ga.App. 641, 510 S.E.2d 139, 142-43 (1998) (stating *463 that obligation to repair and return premises in same condition is subject to implied condition that building will be in existence at expiration of lease); J.R. Simplot Co. v. Rycair, Inc. , 138 Idaho 557, 67 P.3d 36, 42-43 (2003) (stating plain meaning of maintain or repair is not synonymous with rebuild). Here, paragraph 11 of the lease specifically deals with the destruction of the premises "from any cause" and describes contingencies for terminating the lease or rebuilding of the premises. We conclude the repair language in paragraph 7 does not preclude application of the waiver language in paragraph 10 of the lease.
[¶25] Forster/Krebs argue the district court erred in concluding B&B Hot Oil was not responsible for their property damage under paragraph 9 of the lease, which provides:
9. Liability for Loss : The Owner shall not be liable for any injury or damages to any property of the Renter or persons on or about the premises and the Renter shall hold the Owner harmless from any claims or damages thereto. Further, the Owner shall not be liable for any injury, either to persons or property sustained by the Renter or by other persons, including, but not limited to guests of the Renter due to the leased premises, or any part thereof. The Renter shall indemnify and save harmless the Owner from any and all liabilities, costs, and expenses arising from injury to persons or property in or about the premises from any manner or thing growing out of the Renter's use, occupancy, management or control thereof and the Renter agrees the Renter shall obtain a general public liability insurance policy with the Owner as a named insured . Such insurance at all times is to be in an amount of not less than $1,000,000.00 per injury to or death of any one person, $1,000,000.00 for injuries to or death of persons in one accident, and $400,000.00 for damages to property. The Renter agrees to have its insurance carrier(s) furnish Owner certificate(s) verifying insurance coverages in accordance with the above requirements. Such verification must be on the certificate forms as furnished by the Renter or its representative. The acceptance of a certificate with less than the required amounts shall not be deemed a waiver of these requirements. The Renter agrees to have its insurance carrier(s) provide Thirty (30) days written notice to Owner should the Renter's insurance policy be canceled for any reason before the certificate's expiration date. The insurance certificate should list Daniel J. Krebs and Stephen A. Forster as the named insured .
Forster/Krebs argue the court's determination that paragraph 9 only applies to third-party claims is contrary to the express language of paragraph 9. They assert the third sentence of paragraph 9 provides broader coverage than third-party claims and imposes liability on B&B Hot Oil for the property damage.
[¶26] Under N.D.C.C. § 22-02-01, "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." We have said that a "standard hold harmless clause is a 'promise to protect and defend the indemnitee from all claims of third parties .' " Hoff v. Krebs , 2009 ND 48, ¶ 10, 763 N.W.2d 520 (quoting Uren v. Dakota Dust-Tex, Inc. , 2002 ND 81, ¶ 8, 643 N.W.2d 678 ). We conclude the district court correctly construed the language in paragraph 9 as a whole and in conjunction with paragraph 10 to determine paragraph 9 applies to claims by third parties as opposed to claims by Forster/Krebs against B&B Hot Oil for property damage. We therefore conclude the court correctly concluded *464 paragraph 9 deals with indemnification for losses by third parties.
[¶27] Paragraph 12 deals with environmental compliance and includes three subdivisions. Paragraph 12(A) says the renter shall not cause or permit any "Hazardous Substance" as defined in 42 U.S.C.A. § 9601(14) to be "used, stored, or generated on the premises, except for Hazardous Substances of types and quantities customarily used or found in automobile service stations." Paragraph 12(B) says the renter shall not cause or permit the "release" as defined in 42 U.S.C.A. § 9601(22) of any hazardous substance, contaminate, pollutant, or petroleum in, on, or under the premises. Paragraph 12(C) says the renter shall "indemnify and save harmless" the owner "from and against any and all liabilities, damages, suits, penalties, judgments and environmental cleanup, removal, response, assessment or remediation costs arising from contamination of the premises or Release of any Hazardous Substance, pollutant, contaminant or petroleum in, on or under the premises." Paragraph 12(C) is an indemnity clause obligating B&B Hot Oil to indemnify and save harmless Forster/Krebs from and against liability claims by others and does not impose liability on B&B Hot Oil for Forster/Krebs' property damage. Rather, paragraph 12 applies to indemnification for costs of environmental compliance and cleanup and not to Forster/Krebs' property damage caused by an explosion and fire.
[¶28] When the language of the lease is read as a whole, we conclude the district court correctly construed paragraph 10 as a waiver of any and all claims by Forster/Krebs and B&B Hot Oil against the other for damages to Forster/Krebs' building and any property of such party therein.
[¶29] Forster/Krebs nevertheless argue the waiver language in paragraph 10 is unenforceable under N.D.C.C. § 9-08-02 to the extent that language purports to exempt B&B Hot Oil from responsibility for damages caused by a willful or negligent violation of law.
[¶30] Section 9-08-02, N.D.C.C., provides:
All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for that person's own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.
[¶31] We have said " 'the law does not favor contracts exonerating parties from liability for their conduct.' " Hillerson v. Bismarck Pub. Schs. , 2013 ND 193, ¶ 11, 840 N.W.2d 65 (quoting Kondrad v. Bismarck Park Dist. , 2003 ND 4, ¶ 6, 655 N.W.2d 411 ). We have previously discussed the "fraud or willful injury" language of N.D.C.C. § 9-08-02, but we have not heretofore considered the "violation of law, whether willful or negligent" language in that statute. See Hillerson , at ¶¶ 11-15 ; Kondrad , at ¶¶ 6-8 ; Reed v. Univ. of N.D. , 1999 ND 25, ¶ 22 n.4, 589 N.W.2d 880.
[¶32] The source note for N.D.C.C. § 9-08-02, N.D.C.C., states it is derived from Cal. Civ. Code § 1668. Because of that common derivation, California decisions construing Cal. Civ. Code § 1668, while not binding, are entitled to respectful consideration and may be persuasive and should not be ignored. See Werlinger v. Mut. Serv. Cas. Ins. Co. , 496 N.W.2d 26, 30 (N.D. 1993) (construing N.D.C.C. § 9-08-06 ).
[¶33] In Health Net, Inc. v. Dep't of Health Servs. , 113 Cal.App.4th 224, 6 Cal. Rptr. 3d 235, 243-44 (2004), the California Court of Appeals summarized the California courts' interpretation of Cal. Civ. Code § 1668 in the context of invalidating a *465 contractual provision purporting to exempt a party from recovery of damages for any future violation of statutory or regulatory law:
In Tunkl v. Regents of University of California (1963) 60 Cal.2d 92, 95-96, 32 Cal.Rptr. 33, 383 P.2d 441 ( Tunkl ), the California Supreme Court observed that "the courts' interpretations of [ section 1668 ] have been diverse. ... The recent case of Mills v. Ruppert (1959) 167 Cal.App.2d 58, 62-63, 333 P.2d 818... apparently limits '[n]egligent ... violation of law' exclusively to statutory law. [Fn. omitted.] Other cases hold that the statute prohibits the exculpation of gross negligence only; [fn. omitted] still another case states that the section forbids exemption from active as contrasted with passive negligence. [Fn. omitted.]"
Our state Supreme Court concluded in Tunkl , however, that "[i]n one respect ..., the decisions are uniform. The cases have consistently held that the exculpatory provision may stand only if it does not involve 'the public interest.' [Fn. omitted.]" ( Tunkl , supra , 60 Cal.2d at p. 96, 32 Cal.Rptr. 33, 383 P.2d 441.) Finding that a contract between a hospital and an entering patient affects the public interest, the state high court thereupon invalidated a clause in a hospital admission form that released the hospital from liability for any negligence of its employees. ( Tunkl , at pp. 94, 101, 32 Cal.Rptr. 33, 383 P.2d 441.)
....
It is now settled-and in full accord with the language of the statute-that notwithstanding its different treatment of ordinary negligence, under section 1668, "a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law," regardless of whether the public interest is affected. ...
The statute's prohibition against contractual provisions that exculpate violations of statutory law has also been construed to include regulatory violations. (E.g., Halliday v. Greene (1966) 244 Cal.App.2d 482, 488, 53 Cal.Rptr. 267 [general industry safety order requiring two escape exits from work area]; see Delta Air Lines, Inc. v. Douglas Aircraft Co. (1965) 238, Cal.App.2d 95, 105-106, 47 Cal.Rptr. 518 [FAA regulations].) This makes sense since regulations, by definition, are rules, orders, and standards of general application that "implement, interpret, or make specific" the statutory law. ... There is no principled basis upon which to distinguish a violation of statute from a violation of a regulation that implements the statute in the context of prohibited exculpatory provisions.
Accordingly, despite differences in the interpretation of the scope of section 1668, California courts have construed the statute for more than 85 years to at least invalidate contract clauses that relieve a party from responsibility for future statutory and regulatory violations. (See, e.g., Union Constr. Co. v. Western Union Tel. Co. (1912) 163 Cal. 298, 314-315, 125 P. 242 [statute requiring telegraph company to use great care and diligence in the transmission and delivery of messages]; In re Marriage of Fell (1997) 55 Cal.App.4th 1058, 1064-1065, 64 Cal.Rptr.2d 522 [statute requiring financial disclosures prior to marital settlement agreement]; Halliday v. Greene , supra , 244 Cal.App.2d at p. 488, 53 Cal.Rptr. 267 [general industry safety order requiring two escape exits from work area]; Hanna v. Lederman (1963) 223 Cal.App.2d 786, 792, 36 Cal.Rptr. 150 [municipal code section specifying sprinkler system alarm requirements]; see *466 Delta Air Lines , Inc. v. Douglas Aircraft Co. , supra , 238 Cal.App.2d at pp. 105-106, 47 Cal.Rptr. 518 [FAA regulation].)
[¶34] The California courts' interpretation is consistent with the plain language of N.D.C.C. § 9-08-02 that "[a]ll contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for that person's ... violation of law, whether willful or negligent, are against the policy of the law." The California courts' interpretation provides persuasive authority for construing the language of N.D.C.C. § 9-08-02. We conclude that a contractual provision purporting to exempt anyone from responsibility for a willful or negligent violation of statutory or regulatory law is against the policy of law and not enforceable.
[¶35] Here, Forster/Krebs' crossclaim alleged B&B Hot Oil improperly stored the hot oil truck inside the leased building in violation of applicable code requirements. Forster/Krebs argue the explosion was caused by the improper storing of the "knockoff" truck in the leased building and the improper construction of the "knockoff" truck without a failsafe control valve to shut off the flow of propane if the manual control valve failed to close.
[¶36] Section 18-09-02, N.D.C.C., authorizes the state fire marshal to adopt rules for the regulation of liquefied petroleum gas, which includes propane. See N.D.C.C. § 18-09-01. Fire prevention regulations in N.D. Admin. Code § 10-07-01-04 for the storage and handling of liquefied petroleum gases incorporate the national fire protection standards. See NFPA 58 Liquefied Petroleum Gas Code §§ 6.23.7.4 (2008 Ed.) (all gas-fired heating appliances shall be equipped with safety shutoffs) and 6.23.9 (describing requirements for parking, servicing, and repairing vehicles with LP-Gas fuel systems mounted on them inside a building). B&B Hot Oil does not claim its actions did not violate applicable law in this case. Rather, B&B Hot Oil argues Forster/Krebs did not plead intentional or willful conduct under N.D.C.C. § 9-08-02. However, the plain language of N.D.C.C. § 9-08-02 applies to "violation of law, whether willful or negligent," and is not limited to an intentional or willful violation of law.
[¶37] The waiver language in paragraph 10 is unenforceable to the extent it purports to exempt B&B Hot Oil from responsibility for its willful or negligent violation of law. We conclude the district court erred in applying the waiver language of paragraph 10 to Forster/Krebs' claims for damages to the building and its contents allegedly caused by B&B Hot Oil's violation of law. We therefore conclude the court erred in granting B&B Hot Oil summary judgment, and we reverse the summary judgment and remand for proceedings consistent with this opinion.
VI
[¶38] Forster/Krebs argue the district court erred in concluding their insurer, Acuity, consented to a waiver of Acuity's subrogation rights against B&B Hot Oil. Acuity's subrogation rights are dependent on Forster/Krebs' claims against B&B Hot Oil. See Burgener v. Bushaw , 545 N.W.2d 163, 167 (N.D. 1996). In view of our resolution of Forster/Krebs' claims against B&B Hot Oil, we reverse the court's decision on the subrogation claim and remand for proceedings consistent with this decision.
VII
[¶39] Forster/Krebs argue the district court erred in narrowly construing their pleading to allege only a breach of paragraph 9 of the lease and in denying their first motion to amend their pleading to allege breaches of other provisions of the lease and their second motion to amend their pleading to allege concerted action *467 and a joint venture between B&B Hot Oil and JB's Welding.
[¶40] Forster/Krebs' argument involves the district court's interpretation of paragraph 10 of the lease and the court's ultimate determination that Forster/Krebs waived their claims for damage to their property and that any amendment to the pleadings would be futile. A decision on a motion to amend a pleading is addressed to the district court's sound discretion. Alerus Fin. , 2018 ND 119, ¶ 10, 911 N.W.2d 296. In view of our reversal of the summary judgment, Forster/Krebs has effectively obtained relief from the waiver provision in the lease and we conclude it is not necessary to consider whether the district court erred in denying their first motion to amend their pleadings against B&B Hot Oil to allege breaches of additional provisions of the lease. On the record before the district court, we conclude the court did not abuse its discretion in denying Forster/Krebs' second motion to amend their pleading against B&B Hot Oil to allege concerted action and a joint venture with JB's Welding.
VIII
[¶41] We have considered the remaining issues raised by the parties and conclude they are either unnecessary to our decision or without merit. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
[¶42] Lisa Fair McEvers
Daniel J. Crothers
Jon J. Jensen
William A. Neumann, S.J.
Gerald W. VandeWalle, C.J.
[¶43] The Honorable William A. Neumann, S.J., sitting in place of Tufte, J., disqualified.